HAMLETT v. COATES. (No. 7426.)

(Court of Civil Appeals of Texas. Dallas. Dec. 18, 1915. Rehearing Denied Feb. 12, 1916.)

1. TRESPASS TO TRY TITLE &=>35—PLEADING TITLE.

If either party in trespass to try title pleads specially his title, he must recover, if at all, on the title pleaded.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. &=>35.]

2. TRESPASS TO TRY TITLE &=>44—PLEADING TITLE—DIRECTION OF VERDICT.

In trespass to try title, where there was evidence supporting plaintiff's claim that the renting to defendant was by the month, and defendant's that it was by the year, and that she paid rent after the year's expiration, the court properly declined to direct verdict for plaintiff, though a party in trespass to try title pleading his own specially must recover on it, while defendant's plea in reconvention relied on a rental contract for a year which had expired before suit.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. &=>44.]

3. LANDLORD AND TENANT &=>22 — VERBAL CONTRACT TO EXTEND LEASE—UNILATERAL CHARACTER.

Where land was rented verbally, and, after entry upon the premises by the tenant, the landlord stated that as long as the tenant paid her rent she could have the place, the contract was not unilateral.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 55–59; Dec. Dig. &=>22.]

4. FRAUDS, STATUTE OF &=>58—VERBAL EXTENSION OF EXECUTED LEASE.

Such contract was not obnoxious to the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 90, 91; Dec. Dig. &=>58.]

5. SEQUESTRATION &=>21—WRONGFUL SEQUESTRATION—DAMAGES.

Where the business of a boarding house keeper was destroyed by a wrongful sequestration, she could recover for loss of profits, since the same damages are recoverable for the wrongful suing out of writs of sequestration and of attachment.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. &=>21.]

6. ATTACHMENT &=>375—WRONGFUL ATTACHMENT—DAMAGES.

The general rule that one injured by a wrongful attachment cannot recover for loss of business or future profits applies only where the measure of damages is the value of property taken, and not where the recovery is for detention of the property or interruption of its use.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1378–1385, 1387, 1393, 1394, 1398, 1399; Dec. Dig. &=>375.]

7. DAMAGES &=>62—DUTY TO REDUCE.

A boarding house keeper, against whom a writ of sequestration was wrongfully sued out, destroying her business, was under duty to use all reasonable means at her command to secure another place in which to conduct a boarding house and thereby mitigate her loss.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. &=>62.]

8. HUSBAND AND WIFE &=>270—COMMUNITY PROPERTY—SUIT BY WIFE.

A married woman cannot sue in her own name without joining her husband to recover community property, excepting where she has been abandoned by the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 968–971, 973–984, 988; Dec. Dig. &=>270.]

9. HUSBAND AND WIFE &=>239 — ACTION AGAINST WIFE—JUDGMENT—EFFECT.

Judgment in trespass to try title, taken against a wife, sued as a feme sole, who did not plead her coverture, in its operation and effect was the same as if rendered against a feme sole.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 855, 856, 860, 862, 983; Dec. Dig. &=>239.]

10. HUSBAND AND WIFE &=>230—ACTION BY WIFE—PLEADING COVERTURE IN DEFENSE—NECESSITY.

In trespass to try title against a married woman sued as a feme sole, where her plea in reconvention did not disclose her coverture, plaintiff's objection, that defendant, on account of coverture, could not sue for and recover the

damages set up in the plea of reconvention, came too late, when first made in the motion for new trial, as it was plaintiff's duty, if facts existed defeating defendant's right to maintain her cross-action, to allege and prove them.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 804, 835, 840, 842; Dec. Dig. ☞230.]

**11. PRINCIPAL AND AGENT ☞159—TORT OF AGENT—MALICE.**

The owner of premises was not liable for exemplary damages on account of the malice of her agent in wrongfully suing out a writ of sequestration against her tenant, unless the evidence showed that she participated in the malice, or afterwards with knowledge of the facts ratified the act, since in such cases malice on the part of an agent is not imputable to the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–612; Dec. Dig. ☞ 159.]

**12. SEQUESTRATION ☞21 — WRONGFUL SEQUESTRATION—INFERRING MALICE.**

When a want of probable cause for the suing out of a writ of sequestration is shown, malice may be inferred therefrom.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ☞21.]

**13. SEQUESTRATION ☞21 — WRONGFUL SEQUESTRATION—"MALICE."**

In suit for a wrongful sequestration, where the evidence shows want of probable cause for suing out the writ, yet shows honesty of purpose and no intention on the part of the suitor to injure or recklessly disregard the rights of the party against whom the writ is issued, the conclusion that the writ was sued out maliciously is unwarranted, since "malice" is where the facts and circumstances show not only that the grounds upon which the writ issued were untrue and that there was no probable cause for believing them to be true, but evidence bad motives and such reckless disregard of the rights of the party against whom it is sued out as satisfies the mind that the unlawful act was willfully and purposely done to injure such party.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ☞21.

For other definitions, see Words and Phrases, First and Second Series, Malice.]

**14. SEQUESTRATION ☞21 — WRONGFUL SEQUESTRATION—DAMAGES—HUMILIATION.**

In suit for a wrongful sequestration, the award, as actual damages, of $500 for humiliation and grief, could not stand, since the rule that physical and mental suffering may be presumed to follow as a material and necessary consequence upon a serious bodily injury, and damages therefor be recovered as actual damages, has never been extended to justify the recovery of actual damages for distress of mind, humiliation, or mortification of feelings, for a seizure of property under legal process, though injury to feelings caused by such a seizure, under some circumstances, may be taken into consideration in estimating exemplary damages.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ☞21.]

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Trespass to try title by Mrs. M. E. Hamlett against Mrs. M. B. Coates. From a judgment for plaintiff to recover possession of the property sued for, and, in accordance with the jury's verdict against her, for damages awarded defendant on her plea in reconvention, plaintiff appeals. Affirmed in part, and reversed and rendered in part.

G. C. Groce, of Waxahachie, for appellant. J. T. Spencer, of Waxahachie, for appellee.

TALBOT, J. The appellant, Mrs. M. E. Hamlett, brought this suit against the appellee, Mrs. M. B. Coates, in the form of trespass to try title to recover possession of a house and lot in the town of Italy, Tex., and sued out a writ of sequestration. The affidavit for the issuance of the writ of sequestration was made by T. B. Hamlett, agent of the plaintiff, Mrs. Hamlett, and the ground alleged therefor is that the affiant fears the defendant, Mrs. Coates, will use her possession of the property in controversy to injure the same, or to convert to her own use the fruits or revenues produced by the same. The defendant answered by a general demurrer, and pleas of denial and not guilty. She also filed a plea in reconvention for damages, alleging, in substance, that she rented the property in controversy from plaintiff, through her agent, T. B. Hamlett, about April 30, 1912, for a term of one year, at $15 per month, and with the understanding and agreement at the time of entering into such contract that if she paid her rent during such term, she might have the premises as long as she desired; that in pursuance of said agreement and understanding and with the consent of the plaintiff she held over the premises upon the terms of the prior rental contract and paid the rent up to the time she was dispossessed of the rented premises by the execution of the writ of sequestration herein; that said renewal contract began May 1, 1913, and would expire May 1, 1914, and that by the terms of said contract defendant was entitled to the possession of said premises during the whole of said time, but that plaintiff in violation of said contract, knowingly, willfully, and maliciously and without probable cause procured and caused the writ of sequestration herein sued out to be executed, and defendant and her family ejected from said premises, and her furniture, household goods, and wearing apparel piled in the street, whereby said property was damaged in the sum of $100. Defendant further alleged that at the time of the execution of said writ of sequestration she was engaged in the boarding house business and had a large number of boarders, who were paying her a total of $88 a week; that by reason of being dispossessed of the premises in question she was forced to discontinue her said business, whereby she was damaged in the sum of $1,000. Defendant further avers that by reason of the execution of the writ of sequestration "she was humiliated, aggrieved, distressed, and made to suffer in mind and body, which injured and impaired her health," for which she had

sustained the further damage in the sum of $2,500; that by reason of said writ of sequestration having been sued out, willfully, maliciously, and without probable cause she has been damaged in the further sum of $2,500. Defendant prays that she recover of plaintiff as actual damages the sum of $3,600, and as exemplary damages the sum of $2,500. A jury trial resulted in a verdict in favor of the defendant on her plea in reconvention for the sum of $1,940 apportioned as follows: Damages to furniture $20; damages for loss of business $420; humiliation and grief $500; exemplary damages $1,000. Judgment was entered that plaintiff recover possession of the property sued for and in accordance with the jury's verdict against the plaintiff for the damages awarded, and she appealed.

The first assignment of error complains of the court's refusal to give appellant's special charge instructing the jury to return a verdict in her favor. The propositions advanced under this assignment are, in substance: (1) That while neither party in trespass to try title is required to plead his title specially, yet, if he does, he must recover, if at all, on the title pleaded, and that defendant having by her plea in reconvention specifically relied on an alleged rental contract for a year "with the further understanding and agreement at the time of entering into said contract that if defendant should pay her rent during said term, she might have the premises as long as she desired," and the evidence failing to show any such agreement, but showing that the year for which the defendant had rented had expired before suit, and plaintiff's ownership of the property being admitted, the jury should have been instructed to find for plaintiff; (2) that the proof failing to show any agreement extending beyond the year, but showing at most only a unilateral promise without consideration appellee did not sustain the issue tendered by her, and the jury should have been instructed to find for appellant; (3) that when there is a lease of lands for a yearly term at a fixed monthly rental, and the tenant holds over after the end of the term, the landlord has an election to dispossess him, or treat him as a tenant for a new term; that the election is with the landlord, and not with the tenant; and, rent being paid and received according to the terms of the expired lease, there is a presumption that the new holding is upon the terms of the expired contract; but this is only a presumption of fact, and may be rebutted by proof of a different state of facts, and in every case of holding over the nature of such holding, and the relations created thereby, are questions of fact, to be determined from all the circumstances.

[1-4] It is unquestionably true in our practice that if either party in an action of trespass to try title pleads specially his title he must recover, if at all, on the title pleaded, but we do not believe the rule under the appellee's pleadings should be applied in this case. That there was a rental contract between the appellant and appellee for the renting of the premises in controversy to begin April 30, 1912, is undisputed. The real questions at issue were whether the renting, under the terms of the contract, was by the month or by the year, and whether, if by the year, the appellant, without objection, permitted appellee to hold over after the expiration of the rental term and continued to receive the same rent for the use and occupancy of the premises. The question of title, within the meaning of the rule of practice referred to, was not involved. The appellee set up no such title, and in the trial appellant's title was practically admitted, but appellee asserted an extension of the rental period beyond the year, and her right to possession of the premises on the terms of the rental contract by a holding over without objection on the part of appellant, and acceptance by her of the same monthly rent provided for in said contract. In City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763, it is held that:

"The tenant who holds over after the end of the term under which he entered with consent of his landlord is deemed to be in possession upon the terms of his prior lease, upon the ground that the parties are presumed to have tacitly renewed the former agreement."

The English doctrine, as stated by Mr. Smith on Landlord and Tenant, and quoted in the case of San Antonio v. French, supra, is as follows:

"But though at the end of the lease if the tenant holds over he holds as a tenant at sufferance, still if, when the period for the payment of the rent becomes due, he pay the landlord the rent reserved by the expired lease he becomes a tenant from year to year, the payment of such rent by him and the receipt of it by his landlord being considered indicative of their mutual intention to create a yearly tenancy."

The parties in the case before us entered into a verbal contract for the renting of the property in controversy, and, while the evidence was sharply conflicting as to whether the renting was for a year or by the month, it was sufficient to warrant the conclusion that it was for a year, and that appellee continued in possession of the rented premises after the expiration of her time with the tacit or implied consent of the appellant. And the testimony is undisputed that appellant accepted from appellee, for several months after the expiration of one year from the date of the rental contract, the same rent paid prior thereto, and made no demand, according to appellee's testimony, for possession of the rented premises until about the time this suit was instituted. Appellant's contention is that the renting was by the month, and that upon that theory alone the rent paid by appellee after the expiration of the year was accepted. On the other hand, the appellee contends that she had rented the

premises for a year, and that without objection on the part of the appellant she paid the rent as she had formerly done. These respective contentions involved, under the evidence adduced, issues of fact for the determination of the jury, and the court properly declined to instruct the jury to return a verdict for the appellant. There was some testimony to the effect that subsequent to the making of the rental contract and the entry upon the rented premises by appellee, appellant said to appellee that as long as she paid her rent she could have the place, but there is no testimony that at the time said contract was entered into it was agreed and understood between appellant and appellee that if appellee paid her rent during the term beginning April 30, 1912, and ending April 30, 1913, she might have the premises as long as she desired. The issues were substantially as we have stated, and no question as to the contract being unilateral or obnoxious to the statute of frauds arises.

It is next urged by appellant that the trial court erred in admitting evidence tending to show damage from loss of business by appellee as a boarding house keeper, and in submitting as an element of damage, which might be recovered, loss of profits to her as a boarding house keeper, because such loss of profits were not the measure of her damages, in that it was not alleged that appellant knew or had reason to expect that such damages would accrue to appellee from being dispossessed of the property sued for, and because the evidence on these points was insufficient, too vague and uncertain to support a recovery for such damages; and, further, because it developed in the testimony that the defendant was a married woman at the time of the transaction, made the basis of this suit, and no facts were shown which would authorize her to maintain a suit for the recovery of such damages, as such damages, if recoverable at all, constituted a community claim of appellee and her husband, the right of action for which was in him and not in her.

[5-7] We think the court did not err in admitting evidence to show that the appellee had suffered damage from loss of her business as a boarding house keeper, and in submitting to the jury as an element of her damages such loss of business and resultant loss of profits. Writs of sequestration and of attachment are regarded as standing on the same footing with respect to the rights of the defendants to recover damages for the wrongful suing out of them in this state (Harris v. Finberg, 46 Tex. 79), and the general rule is well established that in attachment cases loss of business, and future profits as a consequence thereof, is not an element of actual damages. It is recoverable under a claim for exemplary damages. Kirbs & Spies v. Provine, 78 Tex. 353, 14 S. W. 849. The rule, however, that future profits in suits for wrongful attachment and similar suits do not enter into the actual damages recoverable, applies only, it seems, in those cases in which the measure of damages is the value of the property taken. It does not apply where the recovery is not for the value of the property, but merely with reference to its detention or interruption of its use. Thus where the business of a ginner, in the ginning season, was interrupted by the seizure of an indispensable part of his machinery whereby his business was stopped or delayed for a time, it was held that he was entitled to recover for the profits lost through such interruption. Wilson v. Manning, 35 S. W. 1079. The appellee alleged and proved, in effect, that the rented premises seized and taken from her under and by virtue of the writ of sequestration sued out in this case, were secured and used not only as a home for herself and family, but for the purpose of conducting thereon a boarding house as a means of support. Her business was thereby destroyed, and the actual damages sought to be recovered in this action and awarded by the jury to her as a consequence thereof were the proximate and natural result of the wrongful act charged. Of course it devolved upon appellee, as in other cases of injury, to use all reasonable means at her command to secure another place in which to conduct her boarding house and thereby avoid or mitigate her loss, and this the record shows she did.

[8-10] The contention that because it was developed on the trial that appellee was a married woman when this suit was instituted and no facts appeared which would authorize her to sue and recover the damages claimed, her husband alone could maintain an action therefor, will also be overruled. That a married woman cannot maintain a suit in her own name, her husband not being a party, to recover community property, except where she has been abandoned by the husband, is thoroughly established by the decisions of this state. The appellee testified on cross-examination by appellant:

"I don't know where my husband is now. We are not living together, and were not when this suit was instituted, and have not been living together since. I have never requested him to join me in this suit. He does not know anything about it one way or the other."

It may be conceded that this testimony. which is all that was offered on the subject, fails to show such an abandonment of the appellee by her husband as authorized her to maintain a suit for a recovery of the damages sued for in this action, and yet we think appellant is in no position to urge her incapacity to do so. Appellee is sued by appellant as a feme sole, and nowhere in the record does it appear that her coverture was unknown to appellant at the time the suit was brought. The appellee did not plead her coverture, and the judgment taken against her for the title and possession of the house and lot sued for by appellant, in its operation

and effect, is the same as if rendered against a feme sole. Focke v. Sterling, 18 Tex. Civ. App. 8, 44 S. W. 611. The appellee contends that inasmuch as her husband was not made a party defendant herein, and the suit prosecuted against her alone, she not only was authorized to defend the action brought against her, but also to sue for and recover the damages by reason of the wrongful suing out of the sequestration therein. This seems fair and reasonable, but we do not find it necessary to decide that question. In the case of Caldwell v. Brown, 43 Tex. 216, it is held that one sued as a feme sole, who is at the time married, but who appears and answers without pleading her coverture, cannot avail herself of the fact that she was a feme covert when the same is for the first time alleged in the assignments of error. Phelps v. Brackett, 24 Tex. 236. In Margaret Hab v. Johnston & Co., 1 White & W. Civ. Cas. Ct. App. 336, § 624, it is held that an objection to a judgment that it was improperly rendered against a married woman, her husband not being joined in the suit, comes too late when made for the first time on motion in arrest of judgment. And in Rosenbaum v. Harloe, 1 White & W. Civ. Cas. Ct. App. 489, § 849, in which the wife sued alone, it is held that if facts exist which will defeat the right of the wife to sue alone, but such facts do not appear upon the face of the petition, they must be pleaded and proven; that the burden is upon the defendant to make good the plea. In the case at bar the appellee in her cross-action or plea in reconvention to recover the damages alleged to have been sustained by the execution of the writ of sequestration sued out by appellant occupied the position of plaintiff, and her coverture did not appear upon the face of her pleadings, and it devolved upon appellant, if facts existed which would have defeated her right to maintain said cross-action, to allege and prove them. So it not appearing by pleading or proof that appellant was not aware of the coverture of the appellee until the fact was disclosed by the evidence in the trial of the case, objection that she was not authorized to sue for and recover the damages set up in her plea of intervention came too late when made for the first time in the motion for a new trial filed in the district court, and now urged in this court as ground for reversal of that court's judgment.

[11-13] The next contention is that the trial court erred in submitting to the jury an issue of exemplary damages. It is claimed that the record in this case not only shows no basis whatever for a recovery of exemplary damages, but shows beyond question to any reasonable mind that the action was instituted in good faith and without malice; and furthermore that it appears that the writ of sequestration was sued out by an agent, and not by the plaintiff, and there was neither allegation nor proof that would make the plaintiff responsible for the malice of such agent, even had there been such malice. This contention, we think, should be sustained. The statutory affidavit for the issuance of the writ of sequestration was made by T. B. Hamlett as agent of appellee and said writ otherwise sued out by him. If in suing out the writ T. B. Hamlett was actuated by malice, he is responsible for his wrongful acts; "but his malice will not be imputed by presumption to his principals, while his bad judgment in wrongfully suing out the writ would be." Wallace v. Finberg, 46 Tex. 35. If, therefore, it should be conceded that the sequestration was sued out maliciously and without probable cause by the agent, Hamlett, still appellant would not be liable for exemplary damages caused by the malice of her agent, unless the evidence showed that she had knowledge of, and participated in, the malice, or afterwards ratified the malicious act. This is clearly the law of this state in such cases. Wallace v. Finberg, 46 Tex. 35; Hays v. Railroad Co., 46 Tex. 272; Willis & Bro. v. McNeill, 57 Tex. 465. As stated above, the ratification must have been with knowledge of the existence of the agent's malice. For a principal who was not himself actuated by malice is not liable in exemplary damages for the wrongful act of his agent in suing out and causing to be levied a writ of sequestration maliciously and without probable cause, even though he ratified and approved the same by accepting the benefits thereof, unless at the time of such ratification and approval he had knowledge of such facts as showed the wrongful acts of the agent. Tynburg v. Cohen, 67 Tex. 220, 2 S. W. 734. Our conclusion is, that even if T. B. Hamlett, the agent of appellant, was actuated by malice in suing out the sequestration in this case, and the same was sued out without probable cause, the evidence is insufficient to warrant a finding that appellant had knowledge of, or participated in, his malice, or afterwards with knowledge of his malice ratified and adopted his malicious acts. But we think it may be gravely doubted that appellant's agent was actuated by malice or evil motive in causing the sequestration to be issued and levied. In saying this we are not unmindful of the decisions in this state which hold that when a want of probable cause is shown malice may be inferred therefrom. It does not follow from this, however, that in the absence of a showing of probable cause for suing out the writ malice must necessarily be inferred. Lister v. Campbell, 46 S. W. 876. Malice is where the facts and circumstances show not only that the grounds upon which the writ of sequestration issued were untrue and that there was no probable cause for believing them to be true, but evidences bad motives or such reckless disregard of the rights of the party against whom it is sued out as satisfies the mind that the unlawful act was willfully and purposely done to the injury of

such party. Hence, although the evidence may show a want of probable cause, yet if it shows honesty of purpose and no intention on the part of the person suing out the writ to injure or to recklessly disregard the rights of the party against whom the writ was issued, the conclusion that the writ was sued out maliciously would not be warranted. So strongly are we of the opinion that the facts and circumstances shown in evidence in this case establish the absence of malice on the part of appellant's agent in suing out the writ of sequestration in question that we would probably so hold if it were necessary to a reversal of the judgment for exemplary damages, yet for the clearer reason that the evidence wholly fails to justify a finding that the appellant participated in the malice of her agent, Hamlett, if indeed he was actuated by malice in suing out the writ of sequestration or that she afterwards, with knowledge of this malice, approved and ratified it, we hold exemplary damages should not have been allowed.

[14] Appellant's next proposition is that the court erred in submitting, as elements of actual damage, humiliation, grief, distress, or mental suffering on the part of appellee from being dispossessed of the premises in question, when such damages, if recoverable at all, could be recovered only in this character of case, as exemplary damages, and the record fails to show any right to recover exemplary damages. The record shows that the jury awarded the appellee as actual damages for "humiliation and grief" $500, and that judgment therefor was rendered by the court. This was error and the proposition of appellant must be sustained. It is well settled in this state that physical and mental suffering may be presumed to follow as a material and necessary consequence upon a serious bodily injury, and be recovered as actual damages; but this rule has never been carried to the extent, so far as we are aware, of holding that the seizure under legal process of real or personal property, even though such property be exempt from forced sale, will necessarily cause the owner distress of mind, humiliation, or mortification of feelings. On the contrary, it has been expressly held by our appellate courts that injury to feelings, or mental suffering caused by such seizure, is not recoverable as actual damages, though it may, under some circumstances, be taken into consideration in estimating exemplary damages. Trawick v. Martin-Brown Co., 79 Tex. 460, 14 S. W. 564; Ainsa et al. v. Moses et al., 100 S. W. 791; Evans Co. v. Kingsbury, 25 S. W. 729; Landes v. Eichelberger, 2 Willson Civ. Cas. Ct. App. §§ 133, 134. In Trawick v. Martin-Brown Co., supra, the Supreme Court, in holding that the defendant therein, who had reconvened for actual and exemplary damages for the alleged wrongful suing out of an attachment, was not entitled to recover for injury to his feelings, said:

"It is too plain for argument that this does not belong to either of the classes of cases in which compensation has been allowed for mental suffering."

We have said that exemplary damages were not recoverable under the facts of this case, and in no event then were damages for "humiliation and grief" caused the appellee by the issuance and execution of the sequestration complained of an element of appellee's damages.

The judgment of the court below awarding appellee actual damages in the sum of $440 for injury to her furniture and for "loss of business" will be affirmed, and the judgment awarding appellee actual damages in the sum of $500 for "humiliation and grief," and in awarding her $1,000 as exemplary damages, will be reversed, and judgment here rendered in favor of appellant as to those items of damage.

Affirmed in part; reversed and rendered in part.