### YARBROUGH et al. v. BROOKINS.
(No. 2815.)

Court of Civil Appeals of Texas. Amarillo.
April 20, 1927.

Rehearing Denied May 11, 1927.

1. **Trial** ⊕⇒352(5) — In cropper's action for eviction, court did not err in assuming in special issue that plaintiff was forced to leave; "force."

In action for damages for unlawful eviction from farm which plaintiff occupied under cropper's contract, court did not err in assuming in special issue that plaintiff was forced to leave crop, where such issue was not controverted; "force" being any conduct resulting in bodily fear.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Force.]

2. **Appeal and error** ⊕⇒672—In cropper's action for eviction, judgment awarding exemplary damages against principal and agent held fundamentally erroneous, being unwarranted as to principal.

In action against principal and agent for unlawful eviction from farm occupied by plaintiff under cropper's contract, judgment awarding exemplary damages against all defendants will be reversed as fundamentally erroneous, where pleadings and evidence did not sustain recovery of such damages against principal, notwithstanding that it was warranted as to agent.

3. **Principal and agent** ⊕⇒159(1)—Principal is not liable for exemplary damages for "oppression" by agent not authorized or ratified.

Principal is not liable for exemplary damages for tortious acts or oppression by agent, unless principal has authorized, participated in, or ratified such acts; "oppression" being act of cruelty, severity, unlawful exaction, domination, or excessive use of authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Oppression.]

───────────────────────────────
⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Principal and agent ⬥166(2)—Principal's selling of cotton grown by evicted cropper held not ratification of agent's malice in eviction.**

Principal's sale of cotton grown by evicted cropper *held* not ratification of agent's malice in unlawfully evicting cropper from farm, where principal has no actual knowledge that agent acted maliciously or oppressively.

**5. Landlord and tenant ⬥329 — Where cropper's contract did not provide right of re-entry, landlords were confined to remedy through courts for improper cultivation.**

Where cropper's contract gave no right of re-entry and contained no covenant of forfeiture, landlords were confined to legal remedy through courts if tenant failed to cultivate land in proper manner.·

**6. Landlord and tenant ⬥331(1)—Defendant's good faith in evicting cropper held not issue in cropper's action for damages, in view of evidence; "acting in good faith" (Pen. Code 1925, arts. 482, 1146).**

Good faith of defendant in evicting cropper *held* not issue in cropper's action for unlawful eviction, where there was no right of re-entry under contract and defendant abused and intimidated plaintiff in violation of Pen. Code 1925, arts. 482, 1146, on several occasions; since "acting in good faith" means acting honestly, innocently, and without unlawful purpose.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by. Walter Brookins against John Yarbrough and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellants.

Davenport & Crain and B. Y. Cummings, all of Wichita Falls, for appellee.

HALL, C. J. The appellee, Brookins, filed this suit against M. H. Munger, Trudie T. Munger, and Roy I. Munger, individually, and Trudie T. Munger and Roy I. Munger, as executors of the estate of S. I. Munger, deceased, and John Yarbrough, to recover damages for unlawfully evicting him from a farm which he was occupying under a cropper's contract. The substance of his allegations is: That about the 15th of September, 1924, the Mungers through their agent contracted with him, whereby he was to occupy 28. acres of land for the rental year of 1925, and situated about 20 miles northwest of Wichita Falls. Under the terms of the contract the appellee was to have possession of the land, plant it in cotton for that year, and the appellants bound themselves to furnish him teams and tools to plant and cultivate the crop, the proceeds to be divided equally between appellants and appellee. That about January 1, 1925, he entered into the possession of the land, prepared the ground for planting, and planted all of it in cotton, cultivated the crop through the spring and summer of 1925, irrigated it at frequent intervals, when the condition of the crop required irrigation. That he complied in all respects with the terms and conditions of his contract, until he was compelled by the appellants, the Mungers, and their agent John Yarbrough, to quit the premises. That about August 1, 1925, when the cotton crop was practically made and needed no further cultivation, the appellant Yarbrough, acting for himself and as agent for the Mungers, commenced a course of tyrannical and cruel treatment toward appellee, cursing and abusing him, causing his residence to be searched by deputy sheriff without warrant, who took from his possession and residence a shotgun and a pistol for the purpose of intimidating appellee, and by reason thereof, appellee was made to abandon his crops and the fruits of his year's labor. That about August 9, ·1925, Yarbrough cursed and abused appellee and by force, threats, and fraud compelled him to leave the premises without giving him time to move his household belongings or his family, and ordered the appellee to stay off of the land and never return, threatening to do appellee serious violence in case he did return. That in fear of such threatened violence, appellee was compelled to and did abandon the premises and his crop. That thereafter Yarbrough, acting for himself and as agent for the other appellants, took possession of the premises and crop and converted the crop to their own use, to appellee's damage in the sum of $1,400. That at the time appellee was forced and compelled to leave his home, appellee's wife was sick and in bed, and that her baby was only two weeks old, and as a result of such treatment he was damaged in the sum of $500. That the acts and conduct of appellants in compelling him to leave and in converting his crop were willful, wanton and malicious, and he prayed for exemplary damages in the sum of $5,000.

The appellants answered by general demurrer and general denial, and admitted that they rented the appellee approximately 27 acres of land, but with the understanding and agreement that he was to cultivate and till the farm in a workmanlike manner. That soon after execution of the contract the appellee married and immediately thereafter commenced to neglect his work, failed to till the land in accordance with his contract, and failed to keep the crop clean and to preserve the soil. That appellant Yarbrough continually begged and ·pleaded with appellee to work the land according to contract, all of which the appellee failed to do, and some time during August, 1925, when considerable work was necessary and when the appellee was refusing to work, and should have ·worked, the appellants told him either to work the crop or leave

the premises. That appellee refused to work, and did leave the premises of his own volition, leaving his wife and child there in the house, where they remained either on the premises .or· on appellants' farm during the entire year with her father, who was also a tenant of the appellants. That at this time and thereafter, the appellants advanced money to appellee ·and his wife, in sums not exceeding $400. That after appellee of his own volition abandoned the crop, the appellants went upon the premises and worked it and gathered it at an expense which, together with the money theretofore advanced to appellee, aggregated $732.03. That after appellee abandoned the premises he earned or could have earned at least $50 a month, for· a period of 4½ months, which would, if he had used reasonable diligence, have brought him in at least $225, which sum they asked to be credited on their account, as against expenses that they had made in harvesting and marketing the crop.

They further allege: That the total receipts from appellee's half of the crop amounted to $890.50. That the total charges for gathering the crop, together with the money advanced as aforesaid, aggregated $732.-03, leaving a balance ,due the appellee of $158.56. That if appellee had properly cultivated the land in accordance with the contract and agreement, he would have raised a great deal better crop, but by reason of his breach of the contract and his willful refusal to properly cultivate the crop, the appellants were damaged in the sum of $250. They further specially deny that they acted with any malice or ill will toward the appellee.

Upon a trial the appellee abandoned his claim for damages based upon personal injuries to his wife.

The appellants requested the court to peremptorily instruct the jury in their favor generally, and by separate request asked the court to direct a verdict in their favor upon the issue of exemplary damages. Both requests were refused.

The court submitted the following special issues, which were answered as stated:

"No. 1. What amount of actual damages, stated in dollars and cents, did the plaintiff suffer, if any, by reason of his being forced to leave his house and crop on the Munger farm in August, 1925. Answer: $480.85. In answering this issue, you will estimate the reasonable value of the matured crop which plaintiff would have harvested upon said place, less the expenses of completing and harvesting the same, and such sums as he might reasonably be expected to realize by employment at other work, after his eviction from said place. If you should find from the evidence before you that the defendants or either of them acted wrongfully and maliciously in driving the plaintiff off the farm, then you may award exemplary damages to the plaintiff. Exemplary damages, are such as the jury may determine should be as-

sessed, if any, as a punishment for a willful wrong or injury done. Malice is a wrongful act, knowingly and willfully done with intent to injure another and without just cause."

"No. 2. Bearing in mind the foregoing instruction, state how much exemplary damages, if any, you award to the plaintiff. Answer: $1,-000.

"No. 3. What was the net value of plaintiff's crop on the Munger place when completed and gathered? Answer: $1,904.04.

"No. 4. What amount do you find from the evidence was advanced to the plaintiff by the defendant Yarbrough to enable the plaintiff to make his crop before eviction? Answer: $102.50.

'No. 5. How much did Yarbrough advance to the plaintiff's wife after the plaintiff's' eviction? Answer: $30.

"No. 6. How much would it have cost the plaintiff to have completed and harvested ·his crop? Answer: $286.17."

At appellants' request, the court also submitted the following charge:

"That plaintiff's interest in said crop was one-half of the gross proceeds received from said crop less all necessary expenses which might be reasonably expected to have been incurred in cultivating, gathering, and marketing said crop, after his eviction."

Based upon this verdict, the court entered judgment in appellee's favor against all of the appellants jointly and severally, in the sum of $1,480.85, with interest at 6 per cent. per annum from the date of the judgment.

[1] Under the first proposition the appellants insist that the court erred in assuming in the first special issue that the appellee was forced to leave his crop. The appellee admits that the court did assume that appellants forced appellee to leave, but that the court was warranted in so assuming, because the uncontroverted evidence shows that appellee did leave because of the threats, intimidation, and commands of the appellants and their agent, Yarbrough. We think the appellee is correct.· Force does not necessarily require the use of actual, active, physical force. Any conduct which would result in bodily fear or terror is sufficient to constitute force. Armstrong v. Vicksburg, S. & P. Ry. Co., 46 La. Ann. 1448, 16 So. 468.

The plaintiff testified by deposition that the defendant Yarbrough ran him off the place; that he came down to the plaintiff's premises, and commenced cursing him. His testimony is:

"He told me that I had to move and that I hadn't worked my crop and hadn't done nothing, and I stood there in the door and looked and didn't say nothing, and finally he told me I had to move, and I said, 'There's my crop, and its in just as good condition as anybody's,' and he cursed me again. He kept on· cussing and wanted me to come out of the house, and I wouldn't come out, and he run his hand in his bosom like he was going to get a gun or something, and I went into the house and stood be-

hind the door looking at him, and he kept raising sand and wanting me to come out, and I wouldn't till he went off."

The negro further testified that Yarbrough sent a deputy sheriff to his house, who took a shotgun and his pistol away from him, and said that the deputy told him to tell the rest of the people that he had borrowed it to go rabbit hunting; that after the deputy sheriff had taken away his firearms, on Thursday, Yarbrough came back to his house and cursed him and told him to go off the place and never come back. He further testified that Yarbrough had threatened his life, that he was afraid of him, and the proof shows that he did not return to his home after he left in August.

It appears that the plaintiff then went to Dallas to see the Mungers, who resided there, and saw Mr. Bennett, who represented the Mungers in contracting with plaintiff. He testified that he told Bennett that Yarbrough had run him off and away from his crop, and when Bennett asked him what he did it for, plaintiff replied that he did not know, and that Bennett then said:

" 'Well, don't go back on the place; I'm going out there and will see about it;' and he said Yarbrough was a' hard man to get along with, and 'it won't do for you to fool around him.' "

Plaintiff's wife also testified that Yarbrough came to their house and cursed her husband and told him that he had to leave. The evidence is undisputed that plaintiff did leave before his wife recovered from her confinement and left her alone with her baby in the house. She testified, further, that Yarbrough came afterwards and told her she would have to move, as he wanted the house to put cotton pickers in.

Yarbrough testified that he had no "real malice" against the plaintiff:

"He is just a nigger you know. As to whether I stated that if Walter Brookins sued me, I would feel like.killing him, yes, I guess I said that; I don't know just what I said, but I would feel like doing something to a nigger that would sue me."

Yarbrough's ex parte deposition was taken, and he admitted that he sent the deputy sheriff to the plaintiff's house, but denied that he told him to take away his firearms. He further testified by deposition:

"Yes; its true that I compelled Walter Brookins to leave the Munger farm and the crop that he was cultivating and would not allow him to return and gather his crop."

He admitted, also, that a few days after the plaintiff left home, he told plaintiff's wife that he would give her a certain length of time to get out of the house, as he needed it, and that she must get out in the next few days. He admitted in the deposition that no part of the proceeds of the crop which the plaintiff cultivated had ever been paid to him.

The appellants state in their brief that, while Yarbrough testified in his ex parte deposition that he had compelled the appellee to leave the farm, that Yarbrough explained his testimony while on the witness stand by testifying that he compelled the appellee to leave the farm after appellee had willfully refused to work his crop and had decided to leave the premises rather than work it, and when he was still hanging around the premises. The appellant Yarbrough testified that at that time he told the appellee he had had plenty of time to get off the premises and told him to stay off the premises.

We have carefully reviewed the statement of facts and do not think this statement in the brief is supported by his testimony while on the stand. If it be admitted that Yarbrough did tell plaintiff ·that he must either work the crop according to Yarbrough's orders, or get off, that would still not justify Yarbrough in ousting him, since plaintiff's testimony and other evidence in the record tends to show that plaintiff was reasonably diligent in his work, and that his crop compared favorably with the crops of other Munger farm tenants.

It is not reversible error for the court to assume the existence of uncontroverted facts when submitting issues or in charging the jury, and, after a careful review of the statement of facts, we are convinced that it was not a controverted issue as to whether the plaintiff was forced to leave by the conduct of Yarbrough.

We overrule this proposition.

What is said also disposes of proposition No. 2, with reference to the issue being upon the weight of the testimony.

[2] It is next insisted that the court erred in refusing the appellants Mungers' request for peremptory instruction, in their favor on the issue of exemplary damages. This insistence is based upon the contention that the plaintiff's pleadings are not sufficient to entitle him to recover exemplary damages against the Mungers and because it was not proved that the Mungers had ratified the illegal acts, if any, of Yarbrough in ousting him from the premises. The special charge requested was in favor of all of the defendants, however, if the pleadings are not sufficient to sustain the verdict for exemplary damages against the Mungers, it presents the question of fundamental error.

The plaintiff's petition charges that the wrongful conduct of Yarbrough in taking. possession of the premises and in ousting him from the possession was while "acting for himself and for the said other defendants." It is not charged directly and positively that the Mungers personally did anything to intimidate the plaintiff or that would compel him to leave. The charge is that Yarbrough,

acting for himself and the other defendants, committed the wrong alleged.

The eighth paragraph is as follows:

"Plaintiff further alleges that the acts and conduct of the said defendant in compelling him to leave his said home and in converting his property were willful, wanton, and malicious, and that on account thereof the plaintiff says that he is entitled to recover $5,000 as exemplary damages against the defendants."

This does not charge the Mungers with malice.

[3] The pleading is sufficient to sustain a verdict against Yarbrough for exemplary damages, but the law is settled in Texas that a principal is not liable for exemplary damages for the tortious acts of his agent or servant, prompted by personal malice of the agent or servant, unless the principal has authorized, participated in, or ratified such acts. H. & T. C. Ry. Co. v. Willie, 53 Tex. 318, 37 Am. Rep. 756; P. J. Willis & Bro. v McNeill, 57 Tex 465; Gimbel v. Gomprecht (Tex. Civ. App.) 36 S. W. 781; McGown v. I. & G. N. Ry. Co., 85 Tex. 289, 20 S. W. 80; Dillingham v. Anthony, 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Little v. Rich, 55 Tex. Civ. App. 326, 118 S. W. 1079. That Yarbrough was the agent of the Mungers and that his duties were to superintend the Munger farms and, to some extent, oversee and direct their cultivation, is admitted, and must be implied from the terms of the contract itself. Oppression in verbis is not a ground set up in the pleading for exemplary damages, but the acts and facts alleged in effect tend to show oppressive conduct on the part of Yarbrough. Oppression is defined to be an act of cruelty, severity, unlawful exaction, domination, or excessive use of authority. U. S. v. Deaver (D. C.) 14 F. 595.

[4] It is not charged that any of the Mungers individually authorized or participated in the conduct of Yarbrough which forced the plaintiff to leave the premises and which forms the basis of his claim for exemplary damages. While the testimony of plaintiff shows that he went to Dallas to see the Mungers, he saw only Bennett, another of their agents, and told him of Yarbrough's conduct. There is no evidence in the record which tends to show that the Mungers, or either of them, had any actual knowledge that Yarbrough had acted maliciously or oppressively, and, while the evidence of one of the Mungers shows that they had sold the cotton, this would not be a ratification of Yarbrough's malice. Gimbel v. Gomprecht, supra; Tynburg v. Cohen, 67 Tex. 220, 2 S. W. 734; Hamlett v. Coates (Tex. Civ. App.) 182 S. W. 1144, and authorities cited; J. M. Radford Gro. Co. v. Jamison (Tex. Civ. App.) 282 S. W. 278.

While the court may not have erred in refusing the peremptory instruction against the recovery of exemplary damages, generally, the pleadings nor the evidence sustain a recovery of exemplary damages against the Mungers, and the judgment is therefore fundamentally erroneous, requiring a reversal of the judgment.

[5] By the terms of the cropper's contract, as disclosed by the evidence, there was no right of re-entry given the landlords or their agent even though it be admitted that plaintiff was not cultivating the land in a farmer-like manner, or in accordance with Yarbrough's individual ideas, because the lease contained no covenant of forfeiture nor authorized re-entry and ouster in such event. Under the contract the landlords were confined to their legal remedy through the courts. Johnson v. Gurley, 52 Tex. 222; Bost v. McCrea (Tex. Civ. App.) 172 S. W. 561; Wade v. Madison (Tex. Civ. App.) 206 S. W. 118; Chrone v. Gonzales (Tex. Civ. App.) 215 S. W. 368; Drinkard v. Anderton (Tex. Civ. App.) 280 S. W. 1076; 1 Tiffany, Landlord and Tenant, 7; 36 C. J. 598, 600, 602, 697.

[6] The appellant requested the court to instruct the jury as follows:

"You are instructed that the word 'maliciously' as used in this charge means the willful and knowingly doing of an act toward a person to their injury and detriment and knowing at the time that it will injure him and hurt him and done for the purpose of injuring the said person and without any just or reasonable grounds therefor."

This charge was refused by the court, and the appellant insists that such refusal is error, because if Yarbrough acted in good faith there is no ground for exemplary damages, although serious injury to the plaintiff may have resulted.

The cases cited are where exemplary damages were sought because a writ of sequestration was wrongfully sued out, and it is said in Drinkard v. Anderton, supra, one of the cases cited by appellant:

"If appellant sued out such sequestration, knowing he was not entitled to the possession of the premises, such action justified the submission of the issues of malice and want of probable cause as a basis for awarding exemplary damages."

Yarbrough is presumed to know that he could not oust the plaintiff, under the terms of the rental contract, without due process of law. Several witnesses testified that on numerous occasions he cursed and abused the plaintiff, and this testimony is not denied by Yarbrough. By his abusive language and intimidation of plaintiff he has violated articles 482 and 1146 of the Penal Code. According to the testimony of several witnesses, Yarbrough was an expert and rather profuse in the use of profane and abusive language. We are not willing to concede that a man can illegally oust a tenant and go to his home and, in the presence and hearing of his wife,

curse and abuse him, and by his oppressive conduct drive him away from the premises, and insist that it was done in good faith. Acting in good faith means acting honestly, innocently, without unlawful purpose, and in the absence of all information or belief of facts that would render such action unconscientious. 28 C. J. 716. The issue of the good faith of Yarbrough in his conduct toward the plaintiff is not apparent from the record and is not in issue in the case.

For the reasons stated, the judgment is reversed and the cause is remanded.