Neil Allan **BRAFFORD** and Genevieve Ann Brafford, on behalf of themselves and their children, Christopher Brafford, Marisa Brafford and Ephraim Brafford, Plaintiffs,

v.

**SUSQUEHANNA CORPORATION, a Delaware corporation, Defendant.**

Civ. A. No. 81–JM–674.

United States District Court, D. Colorado.

March 19, 1984.

**15**

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

THIS MATTER is before me on three motions for partial summary judgment filed by the defendant in this action. The motions have been fully briefed and stand ready for determination. Jurisdiction lies pursuant to 28 U.S.C. § 1332 and is not disputed.

Plaintiffs in this action are five members of a family that lived in a house at 510 Seventh Avenue, Edgemont, South Dakota from October, 1977 until January, 1980. Edgemont, South Dakota has been the site of a uranium milling facility since approximately 1956. Until 1972, the Edgemont Mill was owned and operated by Susquehanna Western, Inc., a subsidiary of defendant Susquehanna Corporation.

Uranium ores are processed to produce uranium concentrates which, after further processing, are utilized for civilian power production or military applications. During the processing of uranium ores, certain waste materials, known as "mill tailings" are produced. Plaintiffs contend that at some time during the early 1960's, prior to the time that they purchased their home, mill tailings were removed from the Edgemont Mill and were placed in and around the foundation of their home. Mill tailings are now known to contain quantities of radioactive residues, including radium. The complaint alleges that the radioactive decay process led to the emission of radon gas from these mill tailings which permeated plaintiffs' home during the period of time in which the Braffords resided there.

Plaintiffs claim that the results of radiation measurements taken of the property by the Environmental Protection Agency and the South Dakota Department of Health and Natural Resources show that, as a result of the presence of mill tailings on the property, plaintiffs have been exposed to levels of radiation greatly in excess of those permitted by regulatory standards of the United States government.

John W. Hornbeck, Bragg & Dubofsky, Boulder, Colo., Andrew B. Reid, Broken Plow Law Office, Chadron, Neb., Luke J. Danielson, Denver, Colo., for plaintiffs.

Linnea Brown, Edward J. McGrath, Holme, Roberts & Owen, Denver, Colo., for defendant.

**16**

As a result of exposure to this radiation, the plaintiffs filed the instant action seeking compensation for the loss of their home, for present physical injury, for their dramatically increased risk of cancer and other diseases and consequences of radiation, including present and future medical costs, and for mental grief and anxiety stemming from their radiation exposure. The theories of relief on which these damage claims are premised include negligence, failure to warn, and strict liability. In addition to the claims for compensatory damages, plaintiffs seek punitive damages alleging that defendant's conduct was wanton and reckless.

The pending motions seek dismissal of plaintiffs' claim for treble damages under South Dakota's forcible eviction statute, the claim for punitive damages, and the claim for increased cancer risk. I will address the motions sequentially.

## I. TREBLE DAMAGES

■ In their eighth claim for relief, plaintiffs allege that defendant's conduct caused plaintiffs to be forcibly ejected and excluded from possession of their property. Pursuant to S.D.Cod.Laws Ann. § 21–3–6 (1979), plaintiffs seek treble damages as a result of the alleged forcible eviction. The statute at issue provides:

> For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to him for the act complained of.

Defendant asserts that this section is only applicable in cases involving eviction by the use of physical force. Defendant construes plaintiffs' claim as one for constructive eviction and argues that the conduct on the part of defendant giving rise to plaintiffs' claim does not fall within the purview of the conduct sought to be deterred by the statute.

Plaintiffs respond that the statute does not require the use of physical force, but applies to any conduct which results in bodily fear or terror. *Yarbrough v. Brookins,* 294 S.W. 900, 902 (Tex.Civ.App.1927).

So defined, plaintiffs conclude that the abandonment of their home under the circumstances of this case cannot be characterized as anything other than a forcible exclusion.

Defendant's strict reading of the phrase "forcible exclusion" is not supported by South Dakota caselaw interpreting § 21–3–6. In *Shippy v. Hollopeter,* 304 N.W.2d 118 (S.D.1981), the South Dakota Supreme Court held that the removal of passageway fences and their replacement with a conventional fence constituted forcible exclusion. In so finding, the Court noted that "[t]he actions of defendants ... were a clear signal to plaintiffs not to use the servitude." *Id.* at 122. The Court went on to comment that where there is a forcible exclusion within the contemplation of that statute, the question of good or bad faith cannot affect the right to treble damages.

Here, while it is clear that physical force was not used to keep plaintiffs from their property, for the purpose of this motion, it is equally clear that the conduct of the defendant as alleged deprived the plaintiffs of the continued use of their property within the meaning of the statute. A determination of whether defendant's actions constituted a denial of physical access to the property in a manner contemplated by the *Shippy* decision cannot be made until questions of fact with respect to defendant's intent and plaintiffs' knowledge are resolved. Accordingly, the motion is denied at this time.

## II. PUNITIVE DAMAGES

■ Defendant seeks an order of judgment barring plaintiffs' claim for punitive damages on the grounds that punitive damages are preempted by the exclusive federal regulation and control of nuclear and atomic radiation and radiation hazards. The Edgemont Mill was subject to the statutory, regulatory, and license authority of the Atomic Energy Commission (now known as the Nuclear Regulatory Commission). Defendants contend that because the Atomic Energy Act (42 U.S.C. § 2011, et seq.) places control of matters relating

to the operation of facilities for the milling of uranium ores exclusively in federal hands, an award of punitive damages would be an exercise of regulatory power by the state of South Dakota in an area preempted by the federal government. Defendants cite the 10th Circuit case of *Silkwood v. Kerr McGee Corp.*, 667 F.2d 908 (10th Cir.1981), as authority for their position.

The United States Supreme Court very recently reversed *Silkwood*, however, finding that federal preemption of state regulation of the safety aspects of nuclear energy does not extend to the state-authorized award of punitive damages for conduct related to radiation hazards. *Silkwood v. Kerr McGee Corp.*, — U.S. —, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). I find this ruling dispositive of the argument pressed by defendant in its second motion for partial summary judgment.

## III. CHROMOSOME DAMAGE & INCREASED CANCER RISK

Defendant asserts in its final motion that the injuries alleged by plaintiffs for chromosome damage and increased risk of contracting cancer during their lifetimes are not compensable as a matter of law.

█ It is the law in the 10th Circuit as well as in other jurisdictions that an increased risk of cancer without an accompanying present physical injury is insufficient to state a claim for strict liability. *Bussey v. Safeway*, 78–1091 (10th Cir. September 19, 1978); *Mink v. University of Chicago*, 460 F.Supp. 713 (N.D.Ill.1978); *Rheingold v. E.R. Squibb*, 74 Civ. 3480 (S.D.N.Y.1975); *Laswell v. Brown*, 524 F.Supp. 847 (W.D. Mo.1981) aff'd 683 F.2d 261 (8th Cir.1982); *Westrom v. Kerr McGee Chemical Corp.*, 82 C 2034 (N.D.Ill. October 4, 1983). Accordingly, in order to recover future damages for enhanced cancer risk, plaintiffs must have suffered a definite, present physical injury. This requirement is premised in the principle of tort law that the plaintiff must establish an injury that is not speculative in order to recover damages.

Plaintiffs have characterized their injuries as including immediate, present damage to their cellular and subcellular structures, incurred proportionately to the amount and duration of the radiation exposure. Plaintiffs assert that each of their experts will testify to a reasonable degree of medical probability that plaintiffs have suffered present, permanent, and irreparable genetic and chromosomal damage as a result of their exposure to the radiation emitted from the mill tailings. Plaintiffs thus conclude that the chromosomal damage is itself a present injury that can give rise to a claim for future risk of cancer.

Defendant counters that the chromosomal changes cannot be considered a present injury as a matter of law because the changes are themselves nothing more than a subcellular expression of the increased risk. Defendant warns that acceptance of the circular contention that cellular change is itself a present injury will fundamentally pervert the rule against speculative injury because, under plaintiffs' theory, any one who has been exposed to a known carcinogen could recover. The jury could infer subcellular changes from the fact of exposure to the carcinogen, and based on the present injury of subcellular change, a damage claim would lie for increased risk of cancer.

Defendant also attacks as speculative the very conclusion that there has been subcellular damage. Defendant directs me to portions of the depositions of plaintiffs' experts wherein the experts concede that subcellular changes frequently cannot be seen, measured, or documented.

█ Plaintiffs respond that defendant's "slippery slope" argument is specious. While we all concededly suffer the possibility of chromosome damage as a result of exposure to carcinogens, the damage, and the attendant increased risk, is proportional to the degree of exposure. Here, because of the high levels of radiation to which plaintiffs were exposed, the experts are able to conclude with a reasonable degree of medical probability both that there has

been chromosomal damage and that such damage was caused by the radiation.

I fully understand the impact of defendant's charge that plaintiffs' characterization of subcellular changes as a present injury is an attempt to circumvent the present injury requirement. However, plaintiffs have produced experts of national renown who express their opinion that the extent of subcellular damage resulting to plaintiffs because of their exposure to the radiation constitutes a present physical injury. Dr. Radford describes the injury as present in the sense that the "damage has been done" and the "'trigger' of a cancer change has been cocked". Dr. Morgan characterizes the injury as present in the sense that the subcellular changes operate to deprive plaintiffs of a degree of immunity which they had enjoyed prior to their exposure to the mill tailings.

Upon careful review of the submitted depositions, and after consideration of arguments of counsel, I have decided to deny the motion for partial summary judgment at this time in order to give the parties an opportunity to develop a complete factual record on this issue. There are several considerations underlying my conclusion. First, and of primary importance, is the fact that this issue is being raised under Rule 56. Accordingly, the non-moving party must be given the benefit of all the inferences which the evidence fairly supports even though contrary inferences might reasonably be drawn. *Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434 (10th Cir.1983). Another factor is my knowledge that compensation for all of plaintiffs' injuries must be sought in this action. *Gray v. Linton*, 38 Colo. 175, 88 P. 749 (1906). The fact that plaintiffs will not "get a second bite of the apple" amplifies my caution. Thirdly, I have concluded that defendant's assertion that the testimony relied upon is speculative, goes to the weight of the testimony and not its admissibility. *See Hauser v. Eckhardt*, 168 Colo. 226, 450 P.2d 664 (1969); *Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d 1434 (10th Cir.1983); *Nanda v. Ford Motor Company*, 509 F.2d 213 (7th Cir.1974).

This is especially true where, as here, the inability to precisely quantify the extent of present damage to the chromosomes is a function of medical technology's inability to make such a measure. Defendant will have an ample opportunity to raise questions about the experts' methodology and the facts supporting their conclusions on cross examination. I note finally that the fact that this argument raises an issue of first impression compels careful consideration of the issues against a full factual record. I do not envision that the horrors defendant portends will result from this decision. It should be narrowly read to reflect my opinion that given the strength and consensus of the experts' deposition testimony, and given the levels of radiation to which plaintiffs were allegedly exposed, plaintiffs have at least raised a question of fact with respect to whether a present injury in the form of chromosome damage was suffered by the plaintiffs as a result of their exposure to the radiation emitted from the mill tailings.

Accordingly, it is

ORDERED:

1. Defendant's motion for partial summary judgment on the issue of South Dakota's forcible exclusion statute is denied;

2. Defendant's motion for partial summary judgment on the issue of preemption of punitive damages is denied;

3. Defendant's motion for partial summary judgment on the issues of chromosome damage and increased risk of contracting cancer is denied;

4. Defendant's motion for oral argument (filed December 29, 1983) is denied.