KIRBS & SPIES V. E. W. PROVINE.

No. 2926.

1. **Parties—Damages for Seizure of Partnership Goods.**—In attachment proceedings against a defendant goods were seized belonging to defendant and a partner. Defendant pleaded in reconvention damages caused him by the seizure of the stock of goods. *Held,* that a charge should have been given forbidding the recovery by the defendant for damages which accrued to his partner for the seizure.

2. **Same.**—It is a general rule that for such injury (seizure of partnership goods) there must be a joint recovery. ·

3. **Probable Cause—Facts.**—See facts showing that the agent of the plaintiff in attachment had such reason to believe that the defendant was about to dispose of his property with intent to defraud the plaintiff as would have justified such belief in a reasonably prudent man under like circumstances. This constituted probable cause and would prevent exemplary damages.

4. **Actual Damages.** — Loss of business occasioned by the wrongful seizure of goods under attachment is not an element of actual damages. It may be recovered in exemplary damages.

5. **Parties—Reconvention.**—The defendant in attachment in reconvention sought damages for breach of a contract made by plaintiffs with a business firm of which defendant was a member. *Held,* he could not recover. The breach of such contract could not be asserted save by the firm affected by it.

APPEAL from Tarrant.    Tried below before Hon. R. K. Boykin, Special District Judge.

The opinion contains a statement.

*Capps & Cantey,* for appellants.— 1.   The court erred in refusing to give special charge asked by plaintiffs, "that if you should believe from the evidence in this case and the instructions heretofore given you that the defendant Provine is entitled to recover any actual damages, and if you further believe from the evidence that J. M. Brannon was the owner of any interest in the goods and merchandise attached by plaintiffs, and that said J. M. Brannon has released and relinquished to the plaintiffs whatever interest he may have owned in said property, then it will be your duty to find for said Provine as actual damage on account of the seizure and sale of said goods only such an amount as will be equal to the interest which said Provine owned in and to said goods, finding in plaintiffs' favor the extent of the amount that you may find was owned by J. M. Brannon."   Dicey on Parties, 406; Pars. on Part., 289; Story on Part., secs. 235–244.

2.   The proper measure of defendant's actual damage for a wrongful attachment was the value of the goods at the time and place of seizure with 8 per cent interest.   Wallace v. Finberg, 46 Texas, 35; Block, Oppenheimer & Co. v. Sweeney & Combs, 63 Texas, 425; Blum v. Thomas, 60 Texas, 161; Willis v. Lowry, 66 Texas, 540; Biering v. Bank, 69 Texas, 599; Kaufman & Runge v. Babcock, 67 Texas, 241; Kaufman v. Armstrong, 74 Texas, 65; Drake on Att., sec. 175.

3.   The verdict of the jury is contrary to the law as given them in charge by the court and the evidence in this:   The evidence conclusively shows that Brannon and Provine were partners doing business under the name of E. W. Provine, and that Brannon was unmistakably disposing of and about to dispose of the goods of the concern with intent to defraud the creditors; and the jury were instructed that the acts of Brannon would give plaintiff the right to the attachment.

No brief for appellee.

HOBBY, JUDGE.—Appellants brought this suit by attachment against the appellee Provine to recover a debt amounting to $2032.40.   That the debt was due was admitted.   But appellee pleaded in reconvention actual and exemplary damages resulting to him from the levy of the attachment.   A trial was had in November, 1888, and a verdict was rendered in favor of appellants for the debt and for appellee for the sum of $2500 actual and $1200 exemplary damages.

The first question presented is whether there can be a recovery by a defendant alone in attachment for damages resulting from the issuance of

the writ and its levy on partnership goods of the defendant and another. This question is raised by the twelfth assignment of error. The twelfth error assigned is the refusal of the court to charge the jury as follows: "If you should believe from the evidence in this case and the instructions heretofore given you that the defendant Provine is entitled to recover any actual damages, and if you further believe from the evidence that J. M. Brannon was the owner of any interest in the goods and merchandise attached by plaintiffs, and that said J. M. Brannon has released and relinquished to the plaintiffs whatever interest he may have owned in said property, then it will be your duty to find for said Provine as actual damage on account of the seizure and sale of said goods only such an amount as will be equal to the interest which said Provine owned in and to said goods, finding in plaintiffs' favor the extent of the amount that you may find was owned by J. M. Brannon."

Upon this subject the appellee, Provine, testified as follows: "Brannon and I went in together at the organization of the Imperial Cigar Company, which was in September, 1886. My books show, I think, that Brannon put in $1500 or $1800, and my stock invoiced $2579; I had in about that amount, with other goods we carried in stock. I put in about $2000, and we divided the profits of the business and stood the losses. We were not full partners; I did not recognize him in any capacity in the business. * * * Brannon did not attend to the acceptances; he handled all the acceptances for a while, and then I stopped it; we divided the profits and losses on cigars. I had aimed to give him a half interest in the cigars; I gave him a half interest in the profits of the cigars. The capital account in this book does show that Brannon was credited with $800 and Provine $800 in the cigar business. * * * It is entered on my books as cash capital $800 apiece."

J. M. Brannon testified: "I had a business connection with E. W. Provine in 1886 and 1887; we were in the cigar business here and were full partners; we had a verbal contract; * * * put in $800 apiece and went on with the business. I had access to the books; the book now shown me shows a credit of $500 by merchandise; that is cigars I placed in there; then Provine owed me it shows here about $300, and I guess that is right. Provine was to put in $800, and I put in $800; the capital was $1600, and we went in business on that. The profits were to be divided equally and we were to bear the losses equally. Provine was to keep the books. The Imperial Cigar Company business was to be run in the name of E. W. Provine."

The inventory of the goods attached shows that about one-half consisted of cigars. Brannon testified to owning a half interest in those levied on. He further stated that no partnership settlement had been had and he had not transferred his interest to Provine nor was he claiming any interest in this suit.

Under this state of the proof we think that an instruction should have been given the effect of which would have been to preclude a recovery by appellee alone for damages which the evidence showed grew out of the levy upon Brannon's interest in the goods. There was testimony which tended to show that whatever injury was sustained by appellee ·was sustained jointly with Brannon. And it is an elementary general rule which requires that for such injury there must be a joint recovery. There is nothing in this case making it an exception to that rule.

The twenty-sixth assignment in substance attacks the verdict on the ground of the insufficiency of the evidence to support it, and because "it is excessive and grossly unjust."

The second assignment is that "the verdict of the jury is contrary to the evidence and the law as given them in charge by the court with reference to the exemplary damages found by the jury in this: The jury were instructed that 'want of probable cause and malice must both concur before they could find exemplary damages;' also that if plaintiff had such reason to believe at the time of the attachment that the defendant was about to dispose of his property with intent to defraud his creditors as would have justified such belief in a reasonably prudent man under like circumstances they should find for plaintiffs."

These assignments may, we think, be appropriately considered and disposed of together. Appellant was a merchant in the city of New York. Appellee Provine had been for some time prior to and was in the fall of 1887 his customer, and was engaged in the mercantile business in the city of Fort Worth, Texas, selling cigars, coffee, tea, etc. He was insolvent, and was indebted to appellant, among others, more than $2000 (this is admitted), and had furnished him with a statement of his financial status. This consisted of a list of his real estate in Fort Worth, which he valued at about $15,000, and his cash capital, represented to be $3000. He had been in debt to appellant since the preceding January, and had sent an order for more goods. Cohen, the agent of appellant, was sent to Fort Worth to investigate his financial condition, and with instructions to collect the debt.

He ascertained that Provine had not made a correct statement of· his assets; that his real estate was much involved. This he informed appellee of, who promised to pay the claim upon receipt of money he expected from Memphis. Cohen left Fort Worth and returned in about two weeks, but the claim was not paid, and appellee then promised to pay when one Brannon returned from Paris, Texas. Cohen ascertained that Brannon, who was shown to be equally interested in the goods levied on, was then at Paris disposing of goods—cigars—previously sold by appellant to Provine, and that Stahl, another creditor of appellee, had received an order for the goods or the proceeds thereof. These sales were being made by Brannon, who had been sent to Paris by appellee, and at a sacrifice, and

.. this fact, according to Brannon's evidence, was known to Provine. Brannon returned to Provine with $1400 of the proceeds of these sales and had this amount charged to him on the books of Provine. It seems Cohen could not obtain any security for the claim of appellant from Provine except some notes and accounts, which were declined.

Stahl, a creditor of Provine, was through an agent (Rogers) endeavoring to collect a claim of about $2800 from him. He testifies that Provine promised him just before the attachment to turn over to him the money arising from the sales by Brannon at Paris, and that the money was deposited at the bank in Paris to the credit of Stahl. This statement of appellee Rogers testifies was incorrect.

Appellant's agent, Cohen, finding that appellee would not pay or satisfactorily secure the debt of appellant, and being in possession of the information as indicated above, consulted a law firm at Fort Worth and found that the firm had been retained by appellee.

The attachment was then sued out upon the ground it appears that appellee was about to dispose of his property with intent to defraud his creditors, and levied on goods shown by the return of the officer to be valued at about $2900. Other evidence places the market value at about $1500.

The foregoing recital of the facts proven with respect to the question of probable cause requires, we think, no comment to show that appellant's agent, Cohen, had "such reason to believe that the defendant was about to dispose of his property with intent to defraud appellant as would have justified such belief in a reasonably prudent man under like circumstances."

It follows from this that if there was probable cause for the issuance of the writ there could be no question of malice in the case, and necessarily no exemplary damages.

The court instructed the jury in substance that in addition to the market value of the goods attached the measure of actual damages would also be any loss of business occasioned by such wrongful attachment. This is assigned as error.

The loss of business is not an element of actual damage. It is properly recoverable under a claim for exemplary damages. Kaufman v. Armstrong, 74 Texas, 65. But there is nothing in the record authorizing the submission of the issue as to this character of damage.

What we have said with reference to a recovery by appellee for damages resulting from the levy on goods owned jointly by appellee and Brannon applies to the appellee's plea in reconvention setting up a breach of a contract by appellant to deliver a large quantity of cigars of a certain brand. If, as the evidence strongly tended to show, Brannon was a partner of Provine, then to recover damages for a breach of the contract made when he was such partner he should be joined as a party. Dicey on Parties, p. 151.

There are other questions growing out of the charge to the jury and the rulings of the court in the admission and the exclusion of the testimony, but those which we believe to be controlling we have considered.

For the reasons stated, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted November 11, 1890.