## BINGHAM v. JOHNSON. (No. 9086.)

Court of Civil Appeals of Texas. Galveston.
April 26, 1928.

Rehearing Denied June 8, 1928.

1. **Trespass** ⊕⟶46(3)—**Evidence held insufficient to support finding of $1,500 damages to gin plant as result of trespass.**

In suit to recover actual and exemplary damages alleged to have been caused by wrongful and malicious acts of defendant in trespassing upon premises and destroying gin plant situated thereon, evidence *held* insufficient to support finding of $1,500 damages to gin plant as whole.

2. **Trespass** ⊕⟶46(3)—**Where jury found gin plant could have been repaired and evidence showed that only portion was destroyed, plaintiff could recover for damage done only.**

Where plaintiff sought to recover for destruction of gin plant, but evidence showed that only portion of machinery and plant were destroyed and jury found that by use of ordinary care it could have been repaired and placed in substantially condition prior to injury, *held* that plaintiff was only entitled to recover for damage caused, and could not recover as for the destruction of the entire plant.

3. **Trespass** ⊕⟶50—**In suit to recover for destruction of gin plant which was only damaged, measure of damages was difference in value of plant before and after injury.**

In suit to recover for destruction of gin plant, where it was shown that gin plant was only damaged, measure of damage was difference between value of plant as such before and after injury.

4. **Trespass** ⊕⟶50—**In suit for destruction of gin plant showing that if plant were dismantled boiler and engine would sell for small price, such price could not be taken as value of plant.**

In suit for destruction of gin plant, where evidence showed that if plaintiff had dismantled plant and offered boiler and engine for sale he would have recovered small price for them, *held* that such price could not be taken as value of plant as such after its injury.

5. **Trespass** ⊕⟶50—**Owner could not recover for loss of future profits from operation of gin plant, where he made no effort to repair.**

In suit to recover for destruction of gin plant and loss of profits, where jury found that plaintiff would have received $500 for operation

of plant during certain year and that plant could have been repaired so as to have operated during portion of that year had ordinary care been taken in repairing, *held* that recovery could not be had for loss of profits, since ordinary care was not used to prevent accrual of such damages.

**6. Evidence ⬅474(19)—Admission of testimony of plaintiff and his mother as to value of gin plant held erroneous, where they had no knowledge of value.**

In suit for destruction of gin plant and loss of profits, admission of testimony of plaintiff's mother and of plaintiff, who was 11 years old at time of injury, as to value of plant, which showed that he did not know age of plant or age of its component machinery and had no knowledge of cost or value of machinery, and the mother had no knowledge of its value, *held* erroneous, since rule which permits nonexperts to give opinion as evidence requires that such opinion be based upon facts reasonably sufficient to sustain it and cannot be extended even upon question of value to permit witness shown to be wholly ignorant of value at time of injury to give his opinion as to such value.

**7. Trespass ⬅67 — Exemplary damages held not for jury, where defendant in good faith, believing he owned gin plant, ordered worn out machinery removed.**

In suit for destruction of gin plant and loss of profits, refusal of trial court to submit issue of exemplary damages to jury *held* proper, where undisputed evidence showed defendant purchased farm upon which gin plant was situated for valuable consideration and believed in good faith he had title to property, and did not obtain possession by fraud or force, but instructed employee to remove worn out machinery preparatory to installment of new.

**8. Interest ⬅66—Refusal to give judgment for interest on damages held proper where interest was not specially alleged.**

In suit for destruction of gin plant and loss of profits, refusal of trial court to give interest on amount of damages found by jury from date of accrual of such damages *held* proper, where interest was not alleged specially in plaintiff's pleading.

Graves, J., dissenting.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

Suit by B. L. Johnson, Jr., against George H. Bingham. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

Rucks & Enlow, of Angleton, and Cole, Cole & O'Connor, of Houston, for appellant.

John B. Warren, of Houston, for appellee.

PLEASANTS, C. J. Appellee brought this suit to recover actual and exemplary damages from appellant, alleged to have been caused by the wrongful and malicious acts of appellant in trespassing upon the premises of appellee and destroying a gin plant situated thereon.

Plaintiff's petition alleges in substance: That he was the owner of the lands and premises described in his petition from December 8, 1908, until on or about August 1, 1917. That there was a cotton gin situated on said premises which was used for the purpose of ginning the cotton raised on plaintiff's land and that of other cotton farmers in the community. "That said gin consisted of the building in which it was housed, the gin machinery, press, boiler, engine, pumps, pipes, and connections, and in fact was a complete gin ready for the ginning of cotton, as aforesaid, with a capacity of about 20 bales of cotton per day." That while plaintiff was in the possession and enjoyment of said property on or about June 1, 1913, "the defendant, George Bingham, without right, entered upon said land, and through his agents and employees tore down the said gin and damaged the house in which it was situated, and removed the machinery therefrom, destroyed the press, and, in fact, completely demolished and dismantled the said gin and stand and removed the machinery therefrom and destroyed the press and the building in which it was situated, and appropriated the same to his own use and benefit."

Plaintiff alleges that "there was in said ginhouse an engine, used in running the said gin, one 70 saw gin stand with the feeder and condenser, one screw cotton press and shafting and belting appropriate to and belonging to said gin; also pipe and connections and pump for the pumping of water from the creek near the ginhouse, for use in running said gin and a large tubular boiler, and that all of the said machinery was situated within a two story house except the pipes and connections and the boiler and pump; and the said ginhouse, gin machinery, pump, boiler, shafting, and belting, and other connections and appurtenances belonging to said gin, were of the reasonable value of $2,500."

It was further alleged that because of the removal of the machinery by the defendant and the tearing up and removal of the connections to the pump and boiler, such portions of the gin plant as were left were rendered worthless.

It is then alleged that by such unlawful acts of the defendant, plaintiff was deprived not only of the value of the gin, but also of the profits that plaintiff would have derived from the operation of the plant in ginning cotton raised in the community during the ginning season of the years 1913, 1914, 1915, and 1916, which profits, it is alleged, would amount to the sum of $1,000 for each of said years, or a total of $4,000.

It is further alleged that the acts of the defendant in destroying the gin stand were malicious and done for the purposes of forcing plaintiff, who was then a minor and who had possession of the property through his

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mother with whom he lived and who resided on the property, to abandon its possession and thus enable defendant to wrongfully obtain possession of the premises. Because of such wrongful and malicious acts, exemplary damages are claimed in the sum of $2,500.

The prayer of the petition is that on final hearing plaintiff "have judgment against the defendant for his damages, interest, and costs of suit, and all other relief, general and special, legal and equitable, to which he may be entitled under the law and the facts."

We quote from appellant's brief this sufficient statement of the substance of defendant's answer:

"Defendant, after interposing a general demurrer and general denial, pleaded specially that he bought the land on which the gin plant was located in good faith, for a cash consideration of $6,000, from Bassett Blakely, who, in turn, had bought the land on January 13, 1913, from A. E. Masterson, as administrator of B. L. Johnson, Sr., whose estate was being administered in the probate court of Brazoria county, Tex., and that defendant took possession under such purchase and remained in possession until some time in the same year, 1913, when he was dispossessed under replevy by plaintiff and John B. Warren and Amanda Whitfield; that while, subsequently, the administrator's deed was held invalid, yet the claims and lien indebtedness for the payment of which the administrator's sale was made was established and foreclosed (see Johnson v. Masterson et al. [Tex. Civ. App.] 193 S. W. 201.); and that plaintiff had bought the real estate under such foreclosure proceedings, and was, at the time of the trial, the owner thereof.

"He admitted that he removed the gin stand and press from their foundations for the purpose of repairing the same and renewing a portion of the machinery therein, but averred that he 'did not destroy any portion of said gin machinery, but only removed the gin from its foundation and moved it over on the ginhouse floor, and dismantled the press without destroying any of the parts thereof,' and, further, that for a nominal expense plaintiff could have repaired any damage caused by defendant's acts in time to have operated the gin for 1913 and subsequent years, and that plaintiff was bound to do so."

The trial court held that the evidence failed to raise an issue of malice or willful wrong on the part of defendant in taking possession of the gin and removing machinery therefrom.

In response to the special issues submitted by the trial court, the jury found that the damage "to the gin plant, taken as a whole," caused by the alleged wrongful acts of the defendant, was $1,500. They further found that by the use of ordinary care and diligence the plaintiff could have repaired and replaced the damaged parts of the gin plant and restored it to substantially its condition prior to its injury by the defendant, in time to have ginned a part of the cotton crop for the season of 1913, and that plaintiff's loss of profits from the operation of the gin during the cotton season of 1913, if it had not been damaged by the defendant, was $500.

Upon return of this verdict, judgment was rendered in favor of plaintiff for $2,000, "with interest from March 18, 1928, the date of the judgment, at the rate of 6 per cent. per annum."

Appellant assails the judgment upon numerous grounds embodied in the 18 propositions presented in his brief. It is unnecessary for us to consider many of these propositions.

One of the main grounds of complaint is the insufficiency of the evidence to sustain the findings of the jury fixing the amount of plaintiff's damages. The evidence shows that the gin plant in question, in addition to the building in which the engine and other machinery were operated, consisted of one gin stand, one cotton press, one boiler, one engine, one pump, one grist mill, two belts and a condenser, and also pipes which furnished the necessary water supply from a creek near by. Appellee testified that at the time appellant took possession of the property in June, 1913, and damaged it as alleged in the petition, the gin plant was complete and ready for operation. This plant had been operated every season since 1909, and as long as appellee could remember. He described the building, the boiler, engine, and other machinery and appliances used in the operation of the plant, and testified that the entire plant, building and all, was worth about $3,000. The mother of appellee, who had operated the plant during appellee's minority after the death of his father, testified that the plant, "the whole outfit, house and all, was worth $3,000 or more."

Mr. R. C. Adams, a witness for plaintiff and an experienced operator of cotton gins, who had handled, bought and sold gin machinery, testified that he had been at and around the plaintiff's gin plant, but did not think he had ever been through it. After hearing the several pieces of machinery which constituted plaintiff's plant described by the witness he testified:

"As to what was the value of a 60 horse power steam boiler with 40 tubes in it, which the evidence shows had a diameter of 48" and 12' 6" in length, assuming that the machinery had been run at least three or four years, giving the value of the boiler in the furnace setting up, ready to go, well, I would say that, including the fittings and the furnace, it would be worth anywhere around $700 to $750, if it was in good condition. * * * As to what the value of the engine, in place, connected up ready to go, with the gin, a 30 horse power Farrar and Pratt engine of the reversible type, would be, I would say $500 for the engine on the foundation, hitched up, 30 horse power. You say that it is also in evidence here that that gin had a one-haul 70-saw gin stand with feeder and condenser, and the evidence further showing that the gin stand, feeder and condenser had been used there at least for three or four seasons; as to the value of that gin stand, with feeder and condenser, well, a 70-saw gin stand with feeder and condenser would be worth, set

up, something in the neighborhood of about $400. You say that it is also in evidence here that there was about 300 feet of belting belonging to this gin that connected up the different parts of it. As to what that belting would be worth, about an equal amount of 6-inch, 12-inch, and 18-inch rubber belting, I don't know how to arrive at the value of the belting; of course, if it had been used three or four years it would all depend on the care that had been taken of it, and it would be just a guess. You say that the evidence here also shows that that gin had in it a Texas screw cotton press, one press, and that it had been in use there at least for three or four years, sitting in a second story frame building, with timbers 12 inches square as a foundation for it; I would say that the press erected would be worth about $300. You say that the evidence here also shows that that outfit had the usual connections, had a pump to pump water from the creek up to the boiler, and all connected up by proper belting, and that it was in good state of repair in 1913, just prior to its destruction by the defendant in this case; also that they had a grist mill there that they were operating on the ground floor, all of it connected up, and that it had been used the previous season of 1911 and 1912, and that it was in good state of repair. As to what in my judgment that plant was worth as it stood in 1913, well, I wouldn't know how to arrive at that, Judge, unless you could figure on the replacement value, and whether it was going to be used for a gin; that would have something to do with it; if it was going to be wrecked, it wouldn't be worth as much as it would be to use. You say that you mean the value of it as it stood there ready to go. Well, that would be an opinion or guess on my part; I could tell you what it would cost to replace it. As to what it would have cost to have built this two-story house and placed all those things in there in 1913, the different parts that you have detailed, well, Judge Warren, it would cost anywhere from $2,500 to $3,000 to put it up there."

This is the substance of all of plaintiff's evidence showing the value of the gin plant. Testimony adduced by the defendant fixed the value of the press at $150, and that of the gin stand at $50.

The undisputed evidence shows that the boiler and engine were not damaged or molested by defendant, and the only portions of the plant which any of the testimony shows was injured were the press and gin stand, the second floor of the building from which the press was removed, the pipes connecting the boiler with the water supply, and some of the belting.

Plaintiff testified that in removing the press, which ran up from the ground floor through the second floor of the building, several of the second floor joists were cut and a hole about eight feet square left in the floor. He also testified that the largest of the belts was cut in two and the pipes above mentioned were torn up, thus destroying the connection with the boiler and engine. There is no evidence showing the amount of the damage caused the building by the injury thereto above mentioned, or what it would have cost

to repair same, nor is there any evidence showing the value of the pipes and belting injured, or the amount of the damage caused by their removal and injury.

[1] We do not think this evidence is sufficient to support the finding of $1,500 damages to the gin plant as a whole. Accepting as true the testimony of plaintiff that the gin stand and press were so injured in being removed as to render them worthless, and placing their replacement value at the highest amount fixed by any witness, their loss would only amount to $700.

As before said, there is no testimony as to the amount of damage caused the building by cutting the hole in the second floor, nor the damage to the belts and pipe connections, the value of which is not even shown. Appellee does not contend that there is any evidence to support a finding that the damage to the floor and the pipes and belting amounted to the sum of $800, required to make the amount found by the jury. His theory of his case is that the injury shown to have been done to the plant destroyed its value as a whole and authorized a verdict in his favor for $2,500. We cannot agree with appellee in this contention.

[2] His petition, the substance of which we have before set out, in effect alleges the destruction of all of the machinery making up the gin plant and seeks to recover its alleged value of $2,500, but the evidence does not sustain the allegations of the destruction of the entire plant. On the contrary, this evidence shows that only a portion of the machinery in the plant was destroyed, and the jury finds that by the use of ordinary care and diligence the appellee could have repaired the plant and placed it in substantially its condition prior to its injury by appellant, in time to have operated it during the season of 1913.

Upon this state of the evidence and the finding of the jury, we think it clear that appellee was only entitled to recover as damages to his gin plant the damage caused by the removal, or, as he claims, the destruction, of the gin stand and press, and such damage as may have been caused him by the injury to his building and the pipes and belting used in the operation of the plant.

[3] If the gin plant be considered as a whole in determining the amount of plaintiff's damage, the evidence wholly fails to show the destruction of the plant, but only damage to certain portions of it readily susceptible of repair and replacement, and appellee's measure of damage was the difference between the value of the plant as such before and after the injury. 8 R. C. L., § 16, p. 446. Applying this measure, the evidence fails to sustain the finding that the plant was worth $1,500 less after its injury than it was before the injury occurred.

[4] The evidence does show that if appellee had abandoned and dismantled the plant and offered the boiler and engine for sale he

would have received a very small price for them, one of the witnesses saying that their value would be that of junk only, but this cannot be taken as the value of the plant as such after its injury. If one injures the automobile of another by removing or destroying some of its essential machinery which could be repaired or replaced and the machine restored to its value before the injury, the measure of damage to the owner would be the difference between the value of the automobile before and after its injury, and this difference could only be properly shown by ascertaining the cost of repairing or replacing the injured parts and giving it the same value as an automobile that it had before its injury. In such case, the owner could not recover the difference between the value of the automobile before its injury and what he could obtain by dismantling the automobile and selling its uninjured parts. It seems to us that this is the measure of damage contended for by appellee in this case, and the contention is manifestly unsound.

[5] The finding of the jury on the issue of lost profits is ambiguous in that it may have been intended as a finding that the profits which appellee would have received from the operation of the gin plant during the whole season of 1915 was $500 or as a finding that that amount of profits would have been made by the operation of the gin during the time the appellee could not by the use of ordinary care have repaired and restored the plant to an operating condition. If the first construction be placed on the finding, it cannot support a judgment for $500 for loss of profits, because under well-settled rules of law a plaintiff may not recover damages resulting from a tort when by the use of ordinary care he could have prevented the accrual of the damages. Taylor Bros. Jewelry Co. v. Kelley (Tex. Civ. App.) 189 S. W. 340; Hamlett v. Coates (Tex. Civ. App.) 182 S. W. 1147; Halff Co. v. Waugh (Tex. Civ. App.) 183 S. W. 845; McCauley v. McElroy (Tex. Civ. App.) 199 S. W. 317.

In submitting the issue of lost profits, the jury were first asked to find from the evidence "whether or not the plaintiff by the use of ordinary care and diligence could have placed the damaged parts of said gin plant and repaired same so as to make it substantially as it was before the injuries complained of occurred, in time to gin the cotton of plaintiff and his customers in whole or in part for the season of 1913." In response to this question the jury answered: "He could have in time to gin part." The jury were then asked: "Would plaintiff have earned any profit in operating said gin plant in the ginning of cotton or part of the cotton during the season of 1913, if said plant had not been damaged as alleged?" To this question, the jury answered: "$500."

It is doubtful if the evidence is sufficient to sustain a finding of $500 for lost profits for the whole season of 1913, but, conceding, for argument's sake its sufficiency to show that amount of loss for the entire season, it cannot sustain a judgment for that amount of lost profits for an indefinite portion of that season.

Appellee's witness Amanda Whitfield, after stating that she did not know how long the gin plant had been in operation, that some of the machinery was new and some secondhand when it was placed in the plant, but that she could not say what portion was new or what part of it was old, further testified:

"I had never bought any boilers up to that time, in 1913. I had never bought any steam engines up to that time. I had never bought any cotton presses up to that time. I had never bought any cotton gins up to that time. I don't know where Johnson got any of those, no more than he got some of them from Houston. I don't know what part of them he got from Houston; I don't know what he paid for it. No, sir, I don't know what the value of that stuff was new; I just couldn't say what the price was new. As to whether or not I know the value of it in a secondhand condition at the time in 1913 on the place, before it was torn down, I estimated on the price like it stood; it was in perfectly good fix; wasn't anything broke about it. As to whether or not I know what that sort of machinery was selling for around the Sandy Point country at that time, I never knowed any to be sold around there. No, sir; I don't know how long these secondhand parts of this plant had been used before Mr. Johnson bought it."

After this showing of the witness' knowledge of the value of the gin plant, she was permitted, over appellant's objection that she was not qualified to give her opinion as to the value of the plant, to testify that the plant was worth $3,000 or more. We think from her statement as to her knowledge of the plant and its value she was clearly incompetent to give the testimony objected to by appellant, and the trial court erred in not sustaining appellant's objection. Watkins Land Mortgage Co. v. Campbell, 98 Tex. 372, 84 S. W. 424; Gulf, C. & S. F. Ry. Co. v. Hepner, 83 Tex. 136, 18 S. W. 441; Wells Fargo Express Co. v. Williams (Tex. Civ. App.) 71 S. W. 314; Jones on Evidence, vol. 2, § 363, pp. 877, 878.

[6] The plaintiff B. L. Johnson, who was only 11 years old at the time of the injury to the plant complained of by appellee, was also permitted, over appellant's objection to testify to the value of the plant at the time of its injury. His testimony, like that of his mother, Amanda Whitfield, shows that he did not know the age of the plant, or that of its component machinery, and had no knowledge of the cost or value of the machinery.

The rule of evidence which permits a nonexpert witness to give his opinion as evidence requires that such opinion be based upon facts reasonably sufficient to sustain it, and

·cannot be extended, even upon a question of value. to permit a witness, shown to be wholly ignorant of the cost of the injured property, or of its value at the time· of its injury, to give his opinion as to such value. Teerpenning v. Insurance Co., 43 N. Y. 279.

Appellee has presented cross-assignments ·complaining of the refusal of the trial court to submit the issue of exemplary damages, and to give him judgment for interest on the amounts of damages found by the jury from the dates of the accrual of such damages.

[7, 8] We agree with the trial judge in his rulings upon both of these questions. The undisputed evidence shows that appellant purchased the farm upon which the gin plant was situated for a valuable consideration and believed in good faith that he had title to the property. He took possession of the gin plant for the purpose of preparing it for the operation during the approaching season. For this purpose, he bought a new gin stand and press, which he placed on the premises, and directed one of his employees to remove the old gin stand and press in order that the new machinery might be placed in the plant. He did not obtain possession by fraud or force, and no malice can be attributed to him from the fact that the employee sent by him to remove the worn-out machinery and clean out the ginhouse preparatory to the installment of the new machinery carelessly or recklessly destroyed the severed machinery and otherwise injured the plant.

As we interpret the decision of our Supreme Court in the case of Ewing v. Wm. M. Foley, Inc., 280 S. W. 499, 44 A. L. R. 627, plaintiff would have been entitled, as a matter of law, to recover interest as damages upon the amount found by the jury as damages to his property, and as lost profits, to his ginning business caused by the wrongful acts of the defendant, from the date of the accrual of such damages, if he had alleged that he was entitled to interest as part of his damages, and had excepted to the charge of the court in failing to submit to the jury his right to recover interest. While the petition in this case claims damages in. an amount sufficient to recover interest on the amount of damages found by the jury, such amount of damages is not alleged generally so as to cover any element of damage which might be shown by the evidence, but is confined to the value of the property alleged to have been destroyed and to the amount of profits lost by plaintiff by the wrongful act of the defendant. Interest being a separate and distinct element of damage from that caused plaintiff by the destruction or injury to his property, or by his loss of profits, it cannot be said that amounts specifically claimed as the value of destroyed property, damages to injured property, or for loss of profits to a business include a claim for interest on such amounts.

The trial court so interpreted plaintiff's pleading and did not submit interest to the jury as part of plaintiff's claim for damages, and plaintiff did not except to this charge. We think the cases of Southern Gas & Gasoline Engine Co. v. Adams & Peters (Tex. Com. App.) 227 S. W. 945, and St. Louis Southwestern Railway Co. of Texas v. Seale & Jones (Tex. Com. App.) 267 S. W. 676, sustain the ruling of the trialcourt in refusing to render judgment for plaintiff for interest on the damages found by the jury from the date of the accrual of such damages.

The majority are of opinion that, for the reasons above indicated, the judgment should be reversed and the cause remanded, and it has been so ordered.

Justice GRAVES dissents from this conclusion and will file a statement of his grounds of dissent.

Reversed and remanded.

GRAVES, J. I dissent, believing the evidence was sufficient to sustain, not only the $500 recovery for lost profits in the operation of the gin, but also the $1,500 of damage to the plant, without taking into consideration the articles or appliances which were shown not to have been damaged.

## On Motion for Rehearing.

PLEASANTS, C. J. In our main opinion we state that·the plaintiff did not except to the failure of the trial court to charge the jury that plaintiff was entitled to interest on the amount of damages caused by defendant's trespass upon plaintiff's property, and on the loss of profits sustained by reason of the injury to plaintiff's gin. Upon re-examining the record, we find this statement is inaccurate.

Plaintiff presented a special charge which he requested the court to give the jury, instructing them that plaintiff should be allowed interest at 6 per cent. per annum on the damages found by the jury, from the date of the accrual of the damages. This charge was refused, and appellee complains of its refusal by proper assignment.

Our holding that appellee was not entitled to recover interest was based on the insufficiency of his pleading to support such recovery, and the error in our statement as to plaintiff's acquiescence in the charge was immaterial. We only make the correction because of our desire to accurately state in our opinion the facts reflected by the record.

The majority, after due consideration of the vigorous motion for rehearing presented by appellee, feel constrained to adhere to the holdings expressed in our original opinion and refuse the motion.

GRAVES, J. (dissenting). At the time my dissent on original hearing was entered it was my understanding that the reversal of this cause would be ordered solely on the ground of the insufficiency of the evidence

to sustain the two amounts recovered as damages, that is, $500 and $1,500, respectively; for that reason no reference was made to the theory upon which appellee's cause of action was grounded, nor to the admissibility of the testimony offered in sustaining it.

I now dissent from the judgment overruling the appellee's motion for rehearing, believing, as before, not only that the evidence was sufficient to sustain the recoveries had, but that the trial court submitted the cause upon a correct theory of the law, and that both Amanda Whitfield and B. L. Johnson, Jr., were shown to be competent to give the testimony they did concerning the value of the gin plant.