**SOUTHWEST BANK AND TRUST COMPANY, Appellant,**

v.

**EXECUTIVE SPORTSMAN ASSOCIATION, Inc., Appellee.**

**No. 17756.**

Court of Civil Appeals of Texas, Dallas.

March 3, 1972.

Rehearing Denied March 23, 1972.

See also Tex.Civ.App., 436 S.W.2d 184.

Larry S. Parnass, James G. Clement, Parnass, Weaver, McKaughan & Clement, Irving, for appellant.

Thomas W. Luce, III, Phillip N. Smith, Jr., Jenkens, Spradley & Gilchrist, Dallas, for appellee.

GUITTARD, Justice.

This is a suit for damages for wrongful sale under execution of eighteen portable buildings which plaintiff Executive Sportsman Association, Inc. ("ESA") claims to have owned. The execution was issued on a judgment recovered by defendant Southwest Bank and Trust Company against Ed Morgan, an officer and stockholder of ESA, and the sale was made by the sheriff of Kimble County at the request of the bank. The trial court sustained ESA's motion for partial summary judgment with respect to ownership of the buildings and tried the case on damage issues only. The jury found the value of the buildings and damages from loss of good will, and these findings are the basis of a judgment from which the bank appeals.

### 1. *Partial Summary Judgment*

The bank's first point is that the trial court erred in granting plaintiff's motion

for partial summary judgment because there was a genuine issue of material fact as to the ownership of the buildings. This point is sustained.

The motion was based on the affidavits of Ed Morgan, the judgment debtor, and his brother Guy Morgan. Ed Morgan's first affidavit refers to an attached copy of the notice of execution sale, which describes twenty-one buildings including the eighteen in question, and the affidavit states that on April 26, 1968, when the sale took place, all but a certain designated three of the buildings described in the notice were owned by ESA and not by him. The affidavit further states that ESA is a corporation owned by twelve shareholders, and that he is vice-president. Also attached to this affidavit is a copy of the original articles of incorporation of ESA, dated April 20, 1965, under the name of "Morgan Portable Buildings Corp., Lubbock," and an amendment to these articles dated March 1, 1967, changing the name to "Executive Sportsman Association, Inc." A supplemental affidavit by Ed Morgan states that certain of the buildings listed in the notice were "bought" by ESA from MP–Morgan Portable Buildings, Inc. in the year 1967.

The affidavit of Guy Morgan also refers to an attached copy of the notice of execution sale listing the twenty-one portable buildings and states that Guy Morgan as president of MP–Morgan Portable Buildings, Inc., a Texas corporation, sold and delivered to ESA in the year 1967 certain portable buildings identified on the list, and that he as president of the selling corporation intended for title to the buildings to pass to ESA and intended that thereafter ESA would be the owner of such buildings.

In reply to the motion for summary judgment the bank filed an affidavit of its vice-president Thomas High, stating that he had made loans to both Ed Morgan and his brother Guy Morgan in 1966, that in 1967, after Ed's loan became delinquent, Ed spoke to him at his desk at the bank and suggested that the bank advance additional sums of money on a note which the Morgan brothers held, and that on such occasion Ed Morgan "definitely stated to me that he owned a considerable number of portable metal buildings located on a ranch in Kimble County, Texas, outside the city of Junction that, these were his own personal property and that he and his wife and her parents operated some sort of hunting club there, whereby they leased the right to hunt on the premises and used the portable buildings as sleeping quarters for hunters," and that Morgan further "definitely represented to me that this was his personal property and that it was evidence that he was financially solvent enough to be worth the risk of my authorizing a further advancement of money to him."

■ The question is whether the affidavits of Ed and Guy Morgan establish ESA's ownership of the buildings as a matter of law. We hold that they raise no more than a fact issue under the rules governing motions for summary judgment summarized in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.Sup.1965). There the Supreme Court says that the burden of proof is on the party moving for summary judgment and all doubts as to the existence of a genuine issue as to material fact are resolved against him, that the evidence must be viewed in the light most favorable to the party opposing the motion, that the motion cannot be granted if it involves the credibility of affiants or deponents, that evidence which favors the movant's position is not considered unless uncontradicted, and even uncontradicted evidence from an interested witness only raises an issue of fact unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit and impeach it, and that this exception is especially true when the opposite party has the means and opportunity of disproving the testimony if it is not true and fails to do so.

ESA concedes that Ed Morgan is an interested witness, since he is an officer of the plaintiff corporation, but contends that his testimony is within the recognized exception because it is clear, direct and positive and there are no circumstances tending to discredit or impeach it. We cannot agree for several reasons. The first is that his statements that the buildings were "owned" by ESA rather than by himself and that they were "bought" by ESA from another Morgan corporation in 1967 are not direct and positive statements of fact, but opinions and conclusions based on transactions not factually described. A statement concerning ownership without supporting facts is an inadmissible conclusion if ownership is the main issue. Ballew v. Casey, 9 S.W. 189 (Tex.Com.App.1888); Alamo Cas. Co. v. William Reeves & Co., 258 S.W.2d 211 (Tex.Civ.App., Fort Worth 1953, no writ); McCormick & Ray, Texas Law of Evidence, 2d Ed., § 1426 (1956). Ed Morgan's affidavit gives no information concerning the circumstances of the sales of the buildings to ESA, the amount of the consideration or who paid it, or the names of the persons who acted for the two corporations, and no supporting documents are shown.[1] His unsupported conclusion cannot support a summary judgment. Crain v. Davis, 417 S.W.2d 53 (Tex.Sup.1967).

Another reason for not accepting Ed Morgan's affidavit as conclusive is that the transactions by which ESA acquired the buildings were matters within the special knowledge of Morgan and his business associates, and his testimony concerning such transactions, if untrue, could not be readily contradicted by the bank. Under these circumstances an issue of credibility is presented. James T. Taylor & Son, Inc. v. Arlington Ind. Sch. Dist., 160 Tex. 617, 335 S.W.2d 371 (1960). Cf. Praetorian Mutual Life Ins. Co. v. Sherman, 455 S.W.2d 201 (Tex.Sup.1970).

A third reason is that Ed Morgan was the debtor from whom the bank was attempting to collect its judgment. This is an impeaching circumstance, because if the buildings were his property, he had an obvious motive to conceal that fact and represent that they belonged to ESA, of which he was an officer and stockholder.

The fourth reason is Morgan's statement to the bank officer several months before the execution sale that he then owned "a considerable number of portable metal buildings located on a ranch in Kimble County, Texas outside the city of Junction, and that these were his own personal property." This statement may not be directly inconsistent with the statement in his affidavit that he had no interest in the eighteen buildings in question on the date of the sale, since the time of the statement to the banker was several months earlier and the particular buildings he then claimed to own are not identified, but it is an inferentially impeaching statement that he could be required to explain on cross-examination, and a jury would be entitled to consider it in passing on his credibility. Beaty v. Yell, 62 Tex.Civ.App. 628, 133 S.W. 911 (Fort Worth 1910, no writ); 3A Wigmore, Evidence § 1040 (1970).

We conclude that all these circumstances tend to discredit and impeach the statements in Ed Morgan's affidavit, and therefore his credibility is a matter for a jury.

ESA argues also that even if the partial summary judgment cannot be sustained on Ed Morgan's two affidavits, Guy Morgan is not an interested witness and his affidavit is conclusive. We cannot agree. Guy Morgan's affidavit fails to show that he is disinterested. The original articles of

---

1. We have given no consideration to the twenty-five pages of documents attached as exhibits to the bank's second amended original answer, since they are not authenticated in any manner, and even if they were, could be considered only as pleadings and, therefore, not as summary judgment evidence under Hidalgo v. Surety Savings & Loan Ass'n, 462 S.W.2d 540 (Tex.Sup.1971). Neither have we considered the supplemental affidavit of Warren High, since the trial court struck it on plaintiff's motion.

incorporation of ESA (formerly Morgan Portable Buildings, Inc. of Lubbock) attached to Ed Morgan's affidavit, list Guy Morgan as well as Ed Morgan as a member of the initial board of directors. Since plaintiff had the burden of proof on the motion for summary judgment, we cannot assume that Guy Morgan was not an officer and stockholder of ESA at the time his affidavit was made. The affidavits of Thomas High and Lesla Box, which are not contradicted in this respect, state that they knew Guy and Ed Morgan as brothers and business associates. Consequently we treat Guy Morgan as well as Ed Morgan as an interested witness. The statements in Guy Morgan's affidavit concerning sale of the buildings to ESA and his intention to pass title to ESA are not direct, clear and positive statements of fact free of impeaching circumstances, but are also legal conclusions, since intent to pass title is a matter to be determined from the acts and words of the parties at the time of the transaction, and particularly by documentary evidence if the transaction took that form. Waggoner v. Magnolia Petroleum Co., 252 S.W. 865 (Tex.Civ. App., Amarillo 1923, no writ). None of this information is supplied in support of the motion, or shown to be available to the bank. Consequently we hold that Guy Morgan's credibility also is a matter to be determined by a jury.

For these reasons we reverse the partial summary judgment and remand for a new trial. We now turn to those remaining points which concern matters likely to arise on another trial.

### 2. *Value of Buildings*

■ In several points the bank complains of the first special issue concerning the market value of the buildings at the time of the sheriff's sale and the jury's answer to this issue. Since these points complain only of the submission of the issue and rendition of judgment on the jury's answer and failure to render judgment notwithstanding the answer, we must construe them as raising only the question of "no evidence" or legal insufficiency of the evidence to support submission of the issue, and not factual insufficiency of the evidence to support the answer, since the issue was properly submitted and the judgment properly rendered on it if there was any evidence to support a finding favorable to plaintiff. Owens v. Rogers, 446 S.W.2d 865 (Tex.Sup.1969); Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

■ We overrule these points because we find that the issue of market value is raised by the opinion testimony of Ed Morgan, who was shown to have experience in the portable building business and to be familiar with the prices of such buildings in the general area, and also to have personal knowledge of the buildings in question. The bank insists that his testimony was entitled to no weight because as a stockholder, officer and director of ESA he was an interested witness rather than an impartial and objective expert. These matters may affect his credibility, but not the legal sufficiency of his opinion to support the jury's findings. Gulf States Utilities Co. v. Austin, 439 S.W.2d 411 (Tex. Civ.App., Houston 14th, 1969, writ ref'd n. r. e.); Gulf, C. & S. F. Ry. v. Abbey, 313 S.W.2d 108 (Tex.Civ.App., Fort Worth 1958, no writ).

### 3. *Evidence of Price at Execution Sale*

■■ We overrule also the bank's point complaining of the trial court's granting of plaintiff's motion *in limine* concerning evidence of the price received for the buildings at the sheriff's sale. The motion merely asks that defendant's attorney and witnesses be instructed not to inquire into this matter without first obtaining the court's permission outside the presence and hearing of the jury. The record does not show that defendant sought such permission at the trial. Consequently, the ruling on the motion *in limine* could not have been reversible error in itself. City of Corpus Christi v. Nemec, 404 S.W.2d 834

(Tex.Civ.App., Corpus Christi 1966, no writ). Moreover, since a sheriff's sale is not a free transaction between a willing seller and a willing buyer, the price received at such sale is not competent evidence of market value. Edwards v. Mayes, 136 S.W. 510 (Tex.Civ.App., Galveston 1911, no writ).

### 4. Loss of Good Will

In several points the bank attacks ESA's recovery of damages for loss of good will. These points raise the questions: (1) whether damage to a business resulting from a wrongful levy on property used in the business can be recovered without pleading and proof that the levying creditor had reason to foresee that such damage would probably occur, and (2) whether damages for loss of good will can be based on evidence of loss of prospective profits in a business which had never made a profit. We answer both questions in the negative.

ESA's pleading of damages was limited to the allegation that the execution sale constituted conversion of the buildings, to its actual damage in the amount of $200,-000, including $75,000 for value of the buildings and $125,000 for loss of good will. It also claimed exemplary damages. The court overruled the bank's exception that loss of good will was an element of exemplary damages but not of actual damages. ESA presented as evidence of value of the good will lost the testimony of Ed Morgan and Steven Morris Evans. Morgan testified that ESA had operated a hunting club on a leased ranch in Kimble County beginning some time in 1967, and used the buildings in question as accommodations for hunters, that after the sale it had virtually no accommodations and its membership dropped from 36 to 40 members to six, of which he was one. Evans qualified as an expert on the value of businesses from a purchaser's viewpoint. He defined "good will" as "the intangible value that accrues to a business by virtue of it being in business, having momentum, having an organization, having a concept and structure."[2] In his opinion the value of the good will of ESA immediately before the sale was $90,000 to $235,000 and the value immediately after sale was zero. This opinion was not based on actual profits, since ESA had been in business only one year and had not made a profit, but was based on ESA's prospects and predictions of future earnings. Evans testified that he made assumptions about the amount of patronage that ESA would have when the club got into full operation and that it was anybody's guess what the earnings of a new company would be but that "if you are going to participate in that sort of a game you have to put some kind of a multiplier to it to come up with the price that you think you would be willing to buy or be willing to sell at." He took ESA's figures for probable earnings and, after making some adjustments, calculated that it would be earning "something in the order of $29,000.00." He applied to that figure a price-earnings ratio of ten to one and figured the business would sell for "roughly two hundred and some odd thousand" ($290,000 ?). He then picked a figure of $50,000 for cash needed to run the business and deducted that, and also deducted the book net worth as prepared by the accountant of "something on the order of $150,000.00," and got "a range of good will in the business in the order of $90,-000.00 to $235,000.00," though he thought the amount of money that would change hands in a sale would be greater than that.

2. This definition does not conform to the definition used by the trial court in the charge. It seems to be more a definition of "going value" than a definition of "good will," which implies the disposition of customers to continue patronage. This distinction is made in Los Angeles Gas and Electric Corp. v. Railroad Commission of California, 289 U.S. 287, 313, 53 S.Ct. 637, 77 L.Ed. 1180 (1932); and Cedar Rapids Gas Light Co. v. Cedar Rapids, 223 U.S. 655, 669, 32 S.Ct. 389, 56 L.Ed. 594 (1911). Cf. Note, An Inquiry into the Nature of Good Will, 53 Colum.L.Rev. 660 (1953).

He said that after the sale, since the operation was shut down, the business suffered a "lack of respect" as an investment and prospective purchasers would "steer clear of paying a premium for it."

Issue 2 as submitted and answered by the jury was as follows:

"Find from a preponderance of the evidence the difference in value, if any, of the good will of Executive Sportsman Association, Inc. before the Sheriff's levy and sale and after the Sheriff's levy and sale.

'GOOD WILL' as used in the foregoing Special Issue means the advantage or benefit which is acquired by a business, in excess of the mere value of funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers.

Answer in dollars and cents, if any, or none.

ANSWER: $40,000 "

Issues on malice and exemplary damages were submitted but not answered.

The bank contends that the trial court erred in overruling its exception to the allegation of loss of good will and submission of the issue to the jury because such loss is an element of exemplary damages only. The bank's contention in this respect is supported by J. M. Radford Grocery Co. v. Hothan, 42 S.W.2d 119 (Tex.Civ. App., El Paso 1931, no writ), which holds that loss of profits and good will cannot be recovered as actual damages for wrongful execution but may be considered on the issue of exemplary damages if malice is shown. This decision is based on earlier authorities which consider loss of prospective profits and injury to business and credit as too remote and speculative to be

recovered as actual damages but as proper elements of exemplary damages. Kerbs v. Provine, 78 Tex. 353, 14 S.W. 849 (1890); Kauffman v. Armstrong, 74 Tex. 65, 11 S.W. 1048 (1889). Other authorities to the same effect include Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315 (1890) (loss of credit claimed from wrongful attachment); Miller & English v. Jannett & Franke, 63 Tex. 82 (1885) (loss of profits from business resulting from levy of execution on stock of goods); Ullmann, Stern & Krausse, Inc. v. Rogers, 288 S.W. 1109 (Tex.Civ.App., San Antonio 1926, no writ) (damage to business from levy of execution on stock of goods). In some cases loss of profits has been recovered from interruption of business by way of compensation for loss of use of the property levied on for the period of detention, where the value of the property levied on was not claimed. Adams v. Hood County Sand & Gravel Co., 354 S.W.2d 593 (Tex.Civ. App., Fort Worth 1962, writ ref'd n. r. e.); Dallas Joint Stock Land Bank v. Lancaster, 100 S.W.2d 1029 (Tex.Civ.App., Waco 1937, writ dism'd); Hamlett v. Coates, 182 S.W. 1144 (Tex.Civ.App., Dallas 1915, writ ref'd); Wilson v. Manning, 35 S.W. 1079 (Tex.Civ.App., San Antonio 1896, no writ). In other cases damages arising from deprivation of use for a particular purpose have been held to be special damages and not recoverable in the absence of proof that the levying creditor had notice of the particular facts which gave rise to the damage. O'Neal v. Will's Point Bank, 67 Tex. 36, 2 S.W. 754 (1886); Wollner v. Darnell, 94 S.W.2d 1225 (Tex. Civ.App., Amarillo 1936, no writ).[3]

Although the opinions cited do not state clearly the reason for limiting recovery of actual damages for wrongful levy on property used in a business to the value of the property, they appear to be based on the ground that such damages are not reason-

---

3. But see Strachan Shipping Co. v. Petty Geophysical Eng. Co., 369 S.W.2d 526 (Tex.Civ.App., Waco 1963, writ ref'd n. r. e.), holding that in a tort (negligence) case, as distinguished from a contract case, recovery for loss of use of damaged equipment was authorized without proof of knowledge of special circumstances.

ably foreseeable by the levying creditor and, therefore, not proximately caused by the seizure in the absence of notice to him that the seizure will result in such damage. *Cf.* Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216 (1942), cert. den. 320 U.S. 210. We think this is a sound principle of law and was correctly applied to loss of good will in J. M. Radford Grocery Co. v. Hothan, 42 S.W.2d 119 (Tex.Civ.App., El Paso 1931, no writ), supra.

ESA contends that the *Hothan* case was overruled by the Supreme Court in Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557, 93 N.W.2d 376, 106 A.L.R. 1299 (1936). That was not a case of wrongful seizure but was a suit for damages to a farm and dairy business resulting from blocking a road which plaintiff had to travel to market his products. The jury found damages for loss of value of the products and also a specific amount as damages "to his good will in the dairy business." The court of civil appeals disallowed the latter item, citing the *Hothan* case. The Supreme Court reversed this ruling, but pointed out that "all the damages claimed are properly denominated as special damages, for which the defendant would not be liable unless it had notice that they would likely flow from its wrongful act." The notice requirement was considered satisfied by evidence that plaintiff had given notice to defendant's agent in charge of the work that his business would be damaged. The Supreme Court held that since plaintiff was carrying on an established business, which he was compelled to suspend for about four months, he was entitled to recover the profits he would have earned during that period. The court went on to say that good will was property which could be sold and damaged, but disapproved the submission of the separate issue concerning damages to good will in giving directions for a new trial:

"Good will, though intangible, is an integral part of the business the same as are the physical assets. Upon another trial appropriate issues should be submitted calling for findings as to the decrease in value, if any, to plaintiff's dairy business. The rule for measuring such damages is the same as that for measuring damages to any other property."

This opinion does not expressly overrule *Hothan,* or any of the decisions on which *Hothan,* is based, nor does it hold that damage to good will may be recovered as a separate item of general damages without proof of notice to the wrongdoer that such damages would likely flow from the wrongful act.

ESA relies on Scott v. Doggett, 226 S.W.2d 183 (Tex.Civ.App., Amarillo 1949, writ ref'd n. r. e.), which holds that a finding of loss of good will resulting from a wrongful attachment on a stock of goods was sustained by the evidence, but we do not regard this decision as contrary to *Hothan,* since no contention was made that such recovery was special damages for which a particular notice must be proved, and the opinion states that no objections were made to the issues. ESA also cites Taormina v. Culicchia, 355 S.W.2d 569 (Tex.Civ.App., El Paso 1962, writ ref'd n. r. e.), but that opinion sheds no light on the special damage problem, since it involves evaluation of good will as an asset in dissolution of a partnership. The expert witness in that case used an accounting concept of good will which was altogether different from that used here by ESA's witness Evans.[4]

■ From the above authorities we conclude that damages to a business such as loss of profits or loss of good will, resulting from a wrongful sale under execution of property used in the business can be recovered only as special or consequential damages on proof that at the time of the

4. See discussion of accounting theory of good will in Note, An Inquiry into the Nature of Good Will, 53 Colum.L.Rev. 660, 677 (1953).

levy the levying creditor had notice or reason to foresee that damage to the business would probably result from the sale, and in the absence of such proof, such damage can only be considered as an element of exemplary damages. Since there was neither pleading nor proof here of these prerequisites to special or consequential damages, we sustain the bank's points 16 and 17.

 We also sustain points 18 and 19, which assert that there is no evidence to support the finding of loss of good will in the amount of $40,000. The principal evidence of the value of the good will was Evans' opinion based on prospective profits, which were assumed but not proved, since the company had never made a profit. Consequently the case is essentially the same as if the damages claimed were loss of profits, and is governed by the well-established rule that prospective profits from a new enterprise which has no history of profits are too remote and speculative to be included in compensatory damages. Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097 (1938); Atomic Fuel Extraction Corp. v. Slick's Estate, 386 S.W. 2d 180 (Tex.Civ.App., San Antonio 1964, writ ref'd n. r. e., Tex., 403 S.W.2d 784). Conceivably, a new business which has never made a profit may have good will and may suffer recoverable damage. We hold, however, that prospective profits, which are too speculative for recovery otherwise, cannot be recovered by capitalizing them and calling them good will. Sherwin-Williams Co. v. Perry Co., 424 S.W.2d 940 (Tex.Civ.App., Austin 1968, writ ref'd n. r. e.).

Upon another trial, if the pleadings and evidence raise the issue that the execution sale was a proximate cause of damage to the business of ESA, and such damage is proved with reasonable certainty, the trial court should be governed by the Supreme Court's direction for retrial in Texas & P. Ry. Co. v. Mercer, supra, that the issue to be submitted should be damage to the business rather than damage to good will considered as a separate item. If there is

a fact issue as to whether the sale was a proximate cause of any damage to the business beyond value of the buildings, that issue should be separately submitted. *Cf.* Texas & P. Ry. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958).

### 5. *Evidence of Events after Sale*

 In point 21 the bank complains that the trial court erred in refusing to admit evidence on the issue of ESA's alleged loss of good will for any period other than "immediately after the execution sale." We could not reverse the case on this point, since no reference is made to the record showing exclusion of any particular evidence. In view of another trial and our direction to submit issues concerning damage to business rather than damage to good will alone, we may observe that evidence of events after the sale as well as before should be admitted to the extent that such evidence has a logical bearing on the value of the business after the sale. Evans' testimony concerning value of the good will on April 26, 1968, immediately after the sale, was based on lack of marketability of a business which was no longer operating, and whether the buildings could be replaced and operations resumed could be better determined in the light of later events. Evidence of what ESA did or failed to do to replace the buildings would be admissible because an owner whose property is seized cannot hold the wrongdoer for consequential damages caused by his own failure to replace it. Bingham v. Johnson, 7 S.W.2d 665 (Tex.Civ.App., Galveston 1928, no writ); Taylor Bros. Jewelry Co. v. Kelley, 189 S.W. 340 (Tex.Civ.App., El Paso 1916, no writ).

### 6. *Mitigation of Damages*

 In point 13 the bank complains of the court's failure to submit its requested issue inquiring whether ESA "made any effort or attempt to mitigate any damage or loss alleged to have been suffered by Plaintiff as a result of the sale of the

eighteen (18) portable buildings which are in question in this cause." This point is overruled. Refusal to submit the issue was not error because it did not include the element of failure to use ordinary care to mitigate the damages, and it was not accompanied by a requested issue inquiring how much of the damages were the result of such failure. Moreover, evidence of ESA's failure to replace the buildings would not raise an affirmative defense to be submitted in a separate issue, but rather a question of proximate causation, and the bank would be more appropriately protected by a properly worded damage issue limiting recovery to damages proximately caused by the wrong and an accompanying instruction excluding recovery of damages proximately caused by ESA's failure to use ordinary care to mitigate. Moulton v. Alamo Ambulance Service, Inc., 414 S.W.2d 444 (Tex.Sup.1967). Use of an exclusionary instruction rather than separate issues on mitigation is consistent with the Supreme Court's admonition in Yarborough v. Berner, 467 S.W.2d 188 (Tex.Sup.1971), that the better practice is to submit inferential rebuttal defenses by explanatory instructions rather than by separate issues.

However, we do not agree with ESA's contention that the damages were not mitigable because all the damages occurred when the wrong was done. Though the issue submitted was the value of good will on April 26, 1968, immediately after the sale, we have held above that evidence of subsequent events is admissible if it has a logical bearing on the value of the business after the sale. The bank is not liable for any damages proximately caused by ESA's failure to replace the buildings. If a prudent owner would have done so and continued the business, the bank's liability beyond the value of the buildings themselves would be limited to damages proximately caused by temporary interruption. Without an appropriate instruction on mitigation the jury may not understand this limitation. On another trial, if there is evidence tending to show that all or any part of the damage to ESA's business was proximately caused by its own failure to use reasonable diligence to replace the buildings, the jury should be instructed that any damage or reduction in value proximately caused by such failure should not be considered in determining the damages to the business or its value after the sale.

### 7. Third-Party Claim

 Point 25 complains of denial of leave to the bank to file a third-party action against Ed and Guy Morgan alleging fraud, concealment and conspiracy and praying for indemnity for any damages recovered by ESA. The bank argues that it "may quite possibly now be barred from ever obtaining any relief whatsoever from third persons" for such damages. No reason is suggested why any judgment in the present cause would bar a subsequent action against Ed and Guy Morgan. The matter was within the trial court's discretion under Rule 38 Tex.R.Civ.P., and we find no abuse of that discretion. Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588 (1955); Ruthart v. First State Bank, 431 S.W.2d 366 (Tex.Civ.App., Amarillo 1968, writ ref'd).

Reversed and remanded.